Day, J.
 

 The first question requiring consideration is whether or not the Court of Appeals had jurisdiction to entertain this case upon appeal.
 

 The answer to this question depends upon whether or not the action is “a chancery case.”
 
 *426
 
 We have no hesitancy in saying that an action wherein the termination of a charitable trust is sought, and an accounting for the proceeds thereof by the trustees prayed for, is equitable in character-and is a chancery case.
 

 It has long been recognized that the jurisdiction of courts of chancery over charitable trusts has been exercised without question, and that early in English judicial history the law of charities was engrafted upon the common law, even prior to the statute of 43 Elizabeth, and that there was an inherent jurisdiction in the court of chancery over the subject of charities even before the enactment of that statute. This doctrine is acknowledged so generally that a citation to the following authorities will suffice: 5 Ruling Case Law, 357, Section 95; 11 Corpus Juris, 307; 14 L. R. A. (N. S.), 55. The principle has long been recognized by this court, from
 
 Landis
 
 v.
 
 Wooden,
 
 1 Ohio St., 160, 163, 59 Am. Dec., 615, decided in 1853, down to the case of
 
 Palmer
 
 v.
 
 Oiler, Exrx.,
 
 102 Ohio St., 271, 275, 277; 131 N. E., 362, decided in 1921, where the cases are collected and discussed.
 

 The next inquiry is: Did the trustees have the right to prosecute appeal from the decision of the court of common pleas terminating the trust?
 

 We are of opinion that the trustees did have such power, and we think in the event of a decree of a court terminating a charitable trust it is not only the privilege, but under most circumstances the duty, of the trustee to protect his trust, either by appeal or error. This right was recognized by this court in
 
 Edgerton, Admr.,
 
 v.
 
 Hunt, Trustee, 75
 
 Ohio St., 594, 80 N. E., 1126, where the judg
 
 *427
 
 ment of the Circuit Court refusing to dismiss an appeal by a trustee from a decree terminating a charitable trust was affirmed. In that case the trustee had invoked the jurisdiction of the court under the statute, asking for a construction of the will and direction as to his trust. The heirs at law of the testator filed cross-petitions asking for a termination of the trust, on the grounds of uncertainty of purpose and uncertainty of beneficiaries. From the decree of the common pleas court terminating the trust the trustee appealed to the Circuit Court, and a motion was made in that court to dismiss the appeal. In the opinion of Judges Donahue, McCarty, and Taggart, found in
 
 Hunt, Trustees,
 
 v.
 
 Edgerton,
 
 9 Ohio Cir. Ct. R. (N. S.), 353, 354, it was said:
 

 “It is sufficient to say that we think that he as trustee is affected by this judgment, that it is adverse to him in his trust capacity, and as such trustee he has as much right and power to appeal as if it had been adverse to him personally.”
 

 "We are, therefore, of opinion that the Court of Appeals had jurisdiction to hear and determine the matter as a chancery case upon appeal from the common pleas court, and that to the decree of the Court of Appeals, terminating the trust, proceedings in error may be prosecuted to this court.
 

 Passing to a consideration of the chief points of attack that are made upon this charitable trust, we may say that charitable trusts fail usually from (1) failure of trustee; (2) uncertainty of purpose; (3) uncertainty as to beneficiaries; (4) uncertainty as to manner of execution.
 

 As to the question of trustees, the plain lan
 
 *428
 
 guage of the will, and the nature of the trust, as well as the trustees appointed, to-wit, the trustees of Tallmadge township, obviate any difficulty in regard to the trust ever failing for want of trustees. It is a general principle of equitable juris - diction in dealing with charitable trusts that a court of chancery will never permit a charitable trust to fail for want of trustees.
 

 As to the power of the township trustees to accept this trust, the General Code of Ohio makes ample provision. By Section 18 it is provided:
 

 “The * * * township * * * may receive by gift, devise or bequest, moneys, lands or other properties, for their benefit or the benefit of any of those under their charge, and hold and apply the same according to the terms and conditions of the gift, devise or bequest.”
 

 And by Section 3244, General Code, it is provided:
 

 “It [civil township] shall be capable of suing and being sued, * * * and of receiving and holding real estate by devise or deed, or personal property for the benefit of the township for any useful purpose. The trustees of the township shall hold such property in trust for the township for the purpose specified in the devise, bequest, or deed of gift.”
 

 Authorities recognizing the power of township trustees to receive and hold for charitable purposes trust funds of the character named in the will of the testator in the case at bar are collated in 5 Ruling Case Law, p. 321, Section 42; 14 L. R. A. (N. S.), 112, 113, and 8 Ann. Cas., 1181.
 

 As to the certainty of the purpose and object
 
 *429
 
 of this trust, the terms of the will are quite .explicit. The will reads:
 

 To provide “a home for the aged and destitute people of said Township of Tallmadge or any of the Residents thereof who by reason of sickness or unavoidable misfortune are unable to provide for themselves.”
 

 The relief of the poor and unfortunate is a most worthy object of charity. Trusts for the benefit of the poor, aged, disabled, or otherwise unfortunate of a defined locality are almost universally sustained as valid charitable trusts, and the fact that a bequest for the relief of the poor of the township works a benefit to the taxpayers of the township does not change the charitable nature of the gift, nor make it any less valid.
 
 Strong’s Appeal,
 
 68 Conn., 527, 37 Atl., 395.
 

 It is, however, contended that the testator intended his charity to stop with the limits of this farm as a home, and that none of the benefits of the trust that he created should go to those who are not actually resident or maintained upon the farm, or within the home thus established. This objection goes not so much to the purpose and object of the trust as to the manner of administering the same, because the relief of the aged and destitute people who by reason of sickness or unavoidable misfortune are unable to provide for themselves was the true purpose of Joseph B. Richardson. As to the objection indicated, same will be considered under the administration of the trust.
 

 It is, however, upon the third and fourth grounds that the chief attack upon this charitable
 
 *430
 
 trust is made, to-wit: Does the trust fail for uncertainty of beneficiaries, or for want of beneficiaries, or for incapability of enforcement or administration? It is the paramount claim of those attacking this trust that it is for these reasons chiefly that this trust should be set aside, and apparently the Court of Appeals based its conclusions largely upon these grounds, for it is found in the eighth and eighteenth findings of fact, as follows:
 

 (8) “That at the time of' Richardson’s death there was no beneficiary in existence to receive the bounty provided by Richardson in the home which he directed should be established; *■ *
 
 *
 
 that there has never been a beneficiary such as Richardson specified in his will, to claim the said bounty,” etc.
 

 (18) “That the trust has failed for the reason that there never was money sufficient to carry it through, and for the further reason that from the date of Richardson’s death, to the time of filing this suit, there has never been a beneficiary in existence to receive the benefits proposed by Richardson’s will.”
 

 We reach a different conclusion than the Court of Appeals from the testimony appearing at several places in the record, especially in the testimony of the witness Willis P. Penn:
 

 “Q. Prom the year 1906 down to the year 1920, what do you say as to whether there were in Tallmadge township a — whether there were in Tallmadge township many or few people who were aged and destitute, and who, by reason of sickness or unavoidable misfortune, were unable to provide
 
 *431
 
 for themselves? A. What period of time would that cover?
 

 “Q. From 1906 down to say 1920, two years ago? A. The latter part of that period
 
 there was a good many.
 

 “Q. Take it from 1906 first to 1915, what do yon say? A. Why, not so many. _
 

 “Q. Well, would .yon — do you mean by that there were very few or were there considerable? A. I would say very few.
 

 “Q. And how long did that condition exist — up to what time? A. Along about ’15 or ’16 they begun to get in on ns.”
 

 Other excerpts from the record could be cited to the same effect, but sufficient is it to say that in this township, consisting of lands now a part of the populous city of Akron, and other lands lying adjacent and contiguous thereto, we think the record shows that from the time of the death of the testator down to the date of the filing of the petition in the instant case there were, and are now, in existence “aged and destitute people of said township of Tallmadge” and “residents thereof who by reason of sickness or unavoidable misfortune are unable to provide for themselves.” It would indeed be almost an anomaly that a territory as large as this township, in a community so populous as the one under consideration, should not contain some who come within the class of beneficiaries named by the testator.
 

 It is a significant fact that the Ohio 'Supreme Court reports show that many charitable trusts have been construed, and that in but a few isolated instances has a trust for charitable purposes been
 
 *432
 
 allowed to fail.
 
 Lessee of Bryant
 
 v. McCandless, 7 Ohio, pt. 2, 135;
 
 Trustees of McIntire Poor School
 
 v.
 
 Zanesville Canal & Mfg. Co.,
 
 9 Ohio, 203, 287, 34 Am. Dec., 436;
 
 Zanesville Canal & Mfg. Co.
 
 v.
 
 Zanesville,
 
 20 Ohio, 483;
 
 Williams
 
 v.
 
 First Presbyterian Society in Cincinnati,
 
 1 Ohio St., 478;
 
 Landis
 
 v.
 
 Wooden,
 
 1 Ohio St., 160, 163, 59 Am. Dec., 615;
 
 Hullman
 
 v.
 
 Honcomp,
 
 5 Ohio St., 237;
 
 McIntire’s Admrs.
 
 v.
 
 Zanesville,
 
 17 Ohio St., 352;
 
 Miller
 
 v.
 
 Teachout,
 
 24 Ohio St., 525;
 
 Bd. of Ed. of Fairfield Twp. v. Ladd,
 
 26 Ohio St., 211;
 
 American Tract Society
 
 v.
 
 Atwater,
 
 30 Ohio St., 77, 27 Am. Rep., 422;
 
 Scott
 
 v.
 
 Trustees of Marion Township,
 
 39 Ohio St., 153;
 
 Sowers
 
 v.
 
 Cyrenius,
 
 39 Ohio St., 29, 48 Am. Rep., 418;
 
 Christy
 
 v.
 
 Commissioners,
 
 41 Ohio St, 711;
 
 Mannix, Assignee,
 
 v.
 
 Purcell,
 
 46 Ohio St., 102, 19 N. E., 572, 2 L. R. A., 753, 15 Am. St. Rep., 562;
 
 Palmer
 
 v.
 
 Oiler, Exrx.,
 
 102 Ohio St., 271, 131 N. E., 362. In all the above cases charitable trusts have been sustained.
 

 The general doctrine is that charitable trusts have been favored, and trusts created for such purposes are carried into effect by courts of equity upon general principles of equity jurisprudence under circumstances where private trusts would fail; and this indefiniteness of beneficiaries is one of the. characteristics of charitable trusts, and the uncertainty of the persons to be relieved by a charitable fund should never be called into effect for the purpose of destroying the charitable trust. We think that the conclusion reached by the courts below in declaring this trust void for want of beneficiaries, or uncertainty of beneficiaries, is far too narrow a construction, and not justified by the
 
 *433
 
 record, and not in accord with the great weight of authority in this state.
 

 Another point urged by the defendant in error is that she was in no way bound by the conclusions reached in the court of common pleas in the
 
 Bierce case
 
 in 1914. While it is true she was not a party to that action, she appears to have been a resident of the community and living upon a farm about a half mile or quarter mile from the one concerned in the trust, and she was named in the will of the testator. But whether she is bound by the conclusions of the court in that instance is not necessary for us to determine, in view of the construction that we give the will of the testator in the present instance, and in the light of the authorities applicable to charitable trusts of this character.
 

 We realize ^that the claim is made that the intention of the testator was the creation of a
 
 home
 
 where the destitute and needy of the township could be cared for, but we do not agree that the home on the farm was as much the paramount purpose as was the desire to provide charitable aid “to the aged and destitute of Tallmadge Township or l’esidents thereof who by reason of sickness or unavoidable misfortune are unable to provide for themselves.” The “home” he was providing was not only to help the needy, but would also help “the aged and destitute” of the township if its earnings and increase should be directed to the charitable purposes expressed by the testator. He himself empowered the trustees to prescribe rules and regulations for the maintenance of the “home” and if “not all the premises are needed at any time for the use of the home” the rest of the farm
 
 *434
 
 was to be rented and tbe proceeds applied “to tbe maintenance of said home.”
 

 All must concede tbe clearness of tbe charitable purpose of tbe testator, but tbe difference arises over the trust’s administration. One side says the fund can only be used for beneficiaries actually upon tbe premises devised; tbe other side says as long as tbe fund and its earnings are exclusively used for tbe charitable purpose designated it is not absolutely necessary that tbe beneficiary be always physically upon tbe farm, so long as be is of the class named, to-wit, a resident of Tallmadge township, aged and destitute, or unable to provide for himself by reason of sickness or unavoidable misfortune.
 

 Charitable trusts are entitled to a liberal and favorable consideration and will receive a more liberal construction than is allowable to private trusts or in cases of gifts to private individuals. “They are construed so as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form and manner pointed out by him cannot be followed. If two modes of construction are fairly open, one of which would turn a gift into an illegal trust, while by following the other it would be valid and operative, the latter mode must be preferred.” 5 R. C. L., 353;
 
 Woodruff
 
 v.
 
 Marsh,
 
 63 Conn., 125, 126, 26 Atl., 846, 38 Am. St. Rep., 346,
 
 In re Robinson’s Will,
 
 203 N. Y., 380, 96 N. E., 925, 37 L. R. A. (N. S.), 1023; and
 
 Attorney General, ex rel.,
 
 v.
 
 City of Lowell,
 
 141 N. E. 45. This principle was recognized in Ohio as early as tbe case of
 
 Francis Le Clercq
 
 v.
 
 Trustees of the Town
 
 
 *435
 

 of Gallipolis, 7
 
 Ohio, 218, 221, pt. 1, 28 Am. Dec., 641.
 

 . We think the rule to be well established in this country, in construing charitable trusts, that if the founder thereof describes in the instrument by which he creates the charitable trust the general nature thereof and names the class of beneficiaries, he may leave the details of its administration to be settled by the trustees, under the guidance of a court of equity
 
 (In re Upham Estate,
 
 127 Cal., 90, 59 Pac., 315), and that where exact conformity to the plan of the person who has provided by his will for the charitable trust cannot be carried out in exact detail such object will be attained and duty performed with as close approximation to the original plan as is reasonably practicable, provided the same is in conformity and consistent with the charitable purposes named by the founder; that, at least, a court of equity will not permit such charitable trust to fail because of some slight deviation or change from the original plan, if the general purpose named by the creator of the trust is still attained.
 

 Entertaining the opinion that we do as to the construction to be given the will of Joseph B. Richardson, creating the charitable trust in question, we are disposed to the view that the common pleas court in its directions given to the township trustees in the
 
 Bierce case
 
 was right in its conclusions, and that the trustees in following such directions have been proceeding according to law, although some of the beneficiaries could perhaps be eared for on the farm while others receive relief as directed by the common pleas court; that if some can
 
 *436
 
 be cared for upon the farm that plan should also be pursued.
 

 Our attention is called to the case of
 
 Union Savings Bank & Trust Co.
 
 v.
 
 Alter,
 
 103 Ohio St., 188, 132 N. E., 834, but it is to be understood that the court in that case was construing a strictly private trust, and the rules of construction with regard to charitable and private trusts are very different and the distinction quite marked. A great exactness and strictness of construction is the rule in private trusts, while liberality and broad generous application of the principles of equity are called in vogue in construing a will creating a charitable trust. 11 Corpus Juris, 302; 5 Ruling Case Law, 352;
 
 Hagen
 
 v.
 
 Sacrison,
 
 19 N. D., 160, 123 N. W., 518, 26 L. R. A. (N. S.), 724;
 
 Sherman, Admr.,
 
 v.
 
 Baker,
 
 20 B. I., 446, 40 Atl., 11, 40 L. R. A., 717. “Trusts for public charitable purposes, being for objects of permanent interests and benefit to the public, and perhaps being perpetual in their duration, are upheld under circumstances under which private trusts would fail.” 14 L. R. A. (N. S.), 53.
 

 It is quite true that the will provides for a home, and doubtless the testator intended that some of the beneficiaries should be accommodated thereon, for he says that if the premises be not “all needed for the use of the Home that balance might be rented and the proceeds applied to the maintenance of the Home,” but as a man of aifairs, public spirited and of noble and generous nature, he must also have realized that many cases would arise in the township in which the needy parties might come within the purview of the class of benefici
 
 *437
 
 aries named by him who would be better cared for in their own houses, where the kindly administration of kindred would assist the charitable benefactions of the Richardson Home. This gift is to the township of Tallmadge to be managed by the trustees for the purpose set forth, and we cannot say that it should fail because some of its philanthropic results reach those who, though named as beneficiaries, do not physically reside upon the 76, nor yet upon the 15, acres named in the will.
 

 Admittedly, it might require much money to equip and maintain a farmhouse as a place to provide and care for with modern methods the aged and destitute, yet the purpose to give relief should not be abandoned by reason thereof. The “home” referred to by the testator was only the means to the end which he sought, to-wit, to grant charitable aid to the aged and destitute and the unfortunate of the township • who are unable to provide for themselves. A court of equity in construing a charitable trust should lend its aid in attaining that end rather than let it fail because of doubt as to the
 
 means
 
 described by the testator.
 

 As was said by this court in the case of
 
 McIntire
 
 v.
 
 Zanesville Canal Co.,
 
 in 9 Ohio, at page 287, 34 Am. Dec., 436:
 

 “Whether the bequest can be carried into exact execution or not * * * a court of equity will sustain the legacy, and give effect to it in some form upon principles of its own.
 
 * * *
 
 One of the earliest elements of every social community upon its lawgivers, at the dawn of its civilization, is adequate protection to its property and institu
 
 *438
 
 tions which, subserve public uses, or are devoted to its elevation.”
 

 Also in the case of
 
 McIntire
 
 v.
 
 Zanesville, 17
 
 Ohio St., at page 363, it was said:
 

 “We must look deeper than the mere words of this donation, and, through them, see its spirit. We must inquire what the donor himself would now direct, had he lived to witness the present
 
 altered circumstances
 
 of the case.”
 

 The smallness of the size of the class of beneficiaries is no reason why this trust should fail so long as the object is a public charity. 5 Ruling Case Law, 310;
 
 Sears, Trustee,
 
 v.
 
 Attorney General et al.,
 
 193 Mass., 551, 79 N. E., 772, 9 Ann. Cas., 1200.
 

 Another point urged is that the size of this trust fund is not sufficient to carry out the charitable purposes indicated by the testator. If a charitable trust is valid in all other respects, and can be enforced upon general equitable principles, we think it would be a reproach to equity if the smallness of a gift for charitable purposes should be used alone as a means for defeating it.
 

 We are referred to certain decisions by courts outside of this state, which counsel for defendant in error claim support their position. We think that in most of these cases the instruments creating the trusts under discussion are in such different language from that here under consideration, or that the construction of charitable trusts in those states is so little in harmony with the broad liberal construction accorded such trusts in the state of Ohio, that we cannot regard such cases as outweighing the decisions of this state. And not
 
 *439
 
 all of the decisions cited have the effect claimed by counsel for defendant in error, but recognize many of the principles urged by plaintiffs in error.
 

 Being of opinion that the record in this case shows that there were in existence at the time of the death of the testator, and at the time this trust took effect, beneficiaries of the class named by him, that the will by implication vests the trustees with power of selection among such class, that this charitable trust does not fail for uncertainty of purpose or object, nor for want of trustees, nor for uncertainty in beneficiary, nor for incapability of execution and administration, and that there exists no ground in equity why this charitable trust should not be upheld, it accordingly f ollows that the decrees of the Court of Appeals and the common pleas court, finding that the trust should be declared null and void and terminated, were erroneous. Therefore the judgments of said courts should be, and are hereby, reversed.
 

 Judgments reversed.
 

 Marshall, C. J., Wanamaker, Jones, Matthias and Allen, JJ., concur.
 

 Robinson, J., took no part in the consideration or decision of the case..