*Decision will be entered under Rule 50.*

PROCTOR PATTERSON AND EARL P. DISBRO, EXECUTORS UNDER THE WILL OF MARION C. TYLER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75719.   Promulgated June 12, 1936.

690

*Sterling Newell, Esq.*, for the petitioners.
*George D. Brabson, Esq.*, for the respondent.

OPINION.

BLACK: Section 23 (n) (2) of the Revenue Act of 1928 reads as follows:

In computing net income there shall be allowed as deductions:

\*       \*       \*       \*       \*       \*       \*

(n) *Charitable and other contributions.*—In the case of an individual, contributions or gifts made within the taxable year to or for the use of   \*   \*   \*   (2) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The essential requirements are that the purpose of the donation must be one of those named, viz., religious, charitable, scientific, literary, or educational. The corporation or other entity must be organized and operated exclusively for that purpose and no part of its net earnings shall inure to the benefit of any private stockholder or individual. Meeting these requirements, contributions to it by an individual taxpayer are deductible in the computation of his net income, subject to the percentage limitation. *John R. Sibley et al., Executors,* 16 B. T. A. 915.

The purpose of the trust fund involved in the instant case, as expressed in the instrument of writing, was "To be used to loan or assist employees, former employees, or their families or dependents, etc." Are these uses exclusively charitable? Perry on Trusts, par. 697, vol. II, gives as one of the most approved definitions of "charity" that used by Mr. Justice Gray in *Jackson* v. *Phillips,* 14 Allen, 556. It is as follows:

A charity in a legal sense may be more fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons,—either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.

Zollmann, in his "American Law of Charities", sec. 201, characterizes this definition of Mr. Justice Gray "the best as it certainly is the most scientific of all the definitions." This definition of charity has been many times approved by the courts in dealing with charitable trusts and in the determination of charitable uses.

It is well settled that charitable trusts are liberally construed by the courts so as to give effect if possible to the intent of the donor. This fact is succinctly stated by the Supreme Court of Ohio, the state from which this proceeding comes, in the case of *Gearhart* v. *Richardson,* 109 Ohio St. 418, 434; 142 N. E. 890, as follows:

Charitable trusts are entitled to a liberal and favorable consideration and will receive a more liberal construction than is allowable to private trusts or in cases of gifts to private individuals. "They are construed so as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form and manner pointed out by him cannot be followed. If two modes of construction are fairly open, one of which would turn a gift into an illegal trust, while by following the other it would be valid and operative, the latter mode must be preferred." 5 R. C. L. 353; *Woodruff* vs. *Marsh,* 63 Conn. 125, 126; 26 Atl. 846, 38 Am. St. Rep. 346, *In re Robinson's Will,* 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1023; and *Atty. Gen. ex rel* vs. *City of Lowell,* 141 N. E. 45. This principle was recognized in Ohio as early as the case of *Francis LeClercq* vs. *Trustees of the Town of Gallipolis,* 7 Ohio 218, 221, Part 1, 28 Am. Dec. 641.

In our opinion the contribution here involved meets all require-ments for deductibility as one to charity. The instrument in writing dated November 20, 1931, specifies the fund to be contributed, it named the trustees and defined and limited the purpose of the con-tribution, which purpose was charitable and did not inure to the benefit of any private stockholder or individual.

In *John R. Sibley et al., Executors, supra*, we held that a donation to a corporation organized and operated solely for the purpose of extending aid to the employees of a large department store in cases of death or disability was a charitable contribution and was deductible.

To the same effect are *Mutual Aid & Benefit Association* v. *Com-missioner*, 42 Fed. (2d) 619, and *Gimbel* v. *Commissioner*, 54 Fed. (2d) 780, in both of which the beneficiaries were limited to the employees, families, or dependents of a business concern. The *Gim-bel* case cited our *Sibley* case, *supra*, with approval.

Recently the Surrogate's Court of New York County, New York, had before it a similar question. *In Re Westinghouse's Estate*, 281 N. Y. S. 603, and sustained the gift as a charitable gift under the state law, which is similar to section 23 (n) (2) of the Revenue Act of 1928. The court said in part:

It is inescapable that the intent and purpose of this gift was charitable. The number of employees of the air brake company is very large. There is nothing in testator's language which indicates any purpose to confer a merely private benefit on anyone. Everything in the provisions of the will, both initially and alternately, speak a general charitable purpose. The fact that in some aspects an individual benefits is true of all charity. That type of individual benefit erects no bar to this gift.

The gift here is not to the corporation. It is to a group who, in acting under the provisions of the will, are trustees in a real sense. The wide discretion committed to them does not import any consent by the testator to a private and individual use of the fund. They are vested with discretion to use the fund impersonally and for the general benefit of this large body of employees. That use of this fund is a "charitable use" within the meaning of the Tax Law and the gift is subject to deduction in determining the net estate. *Eagan* v. *Com-missioner of Internal Revenue, supra; Gimbel* v. *Commissioner of Internal Revenue* (C. C. A.) 54 F. (2d) 780.

Cases relied upon by respondent against the validity of the trust as a charity have been examined, but are not considered in point, as in *Slee* v. *Commissioner*, 42 Fed. (2d) 184, it was held that the birth control league was not within the statute; *Henriette T. Noyes*, 31 B. T. A. 121, the national and state League of Women Voters was not educational; *Henry C. Du Bois*, 31 B. T. A. 239, the beneficiaries were named relatives and an old negro servant; and *James Sprunt Benevolent Trust*, 20 B. T. A. 19, was a private charity to relatives.

The distinction between these cases and the instant case seems clear and no further discussion of them is necessary.

Does the fact that one of the purposes of the trust as expressed in the written instrument was to loan money in assisting employees and former employees of the W. S. Tyler Co. or their families or dependents destroy the exclusively charitable purpose of the trust? It has been held that where an organization is otherwise classified as charitable or educational or religious, mere incidental things which are not charitable or educational or religious are not sufficient to deprive the organization of its charitable or educational or religious classification. *Trinidad* v. *Sagrada, etc.*, 263 U. S. 578. But it must be assumed that the direction of the donor in the instant case to the trustees that the trust fund should be loaned to such employees, former employees, etc., as might be in need of assistance was not merely incidental. It must be construed as one of the dominant purposes of the trust. It should be noted however that none of the profits, if any, from such loans would inure to the benefit of any private individual.

Zollman, in his book, "American Law of Charities", sec. 277, says:

Property to be loaned out may create a charitable trust. No less a person than Benjamin Franklin in his will made provision for such a loan. Having laid the foundation for his fortune through the kind loan of money on the part of two friends, he wishes to be useful in forming and advancing young men to be of service to their country. He therefore left a fund of one thousand pounds sterling each to the cities of Boston and Philadelphia to be loaned out at 5 per cent interest to young married artificers under the age of twenty-five years who had served an apprenticeship and had maintained a good moral character. This disposition has been maintained as a charitable gift by the Supreme Court of Massachusetts, *Boston* v. *Doyle*, 184 Mass. 373, 68 N. E. 851, and by the courts of Pennsylvania, *Franklin* v. *Philadelphia*, 2 Pa. Dist. Rep. 435. The New York Supreme Court has held that the fact that the charitable fund is to be loaned out to be repaid by the beneficiaries five years after they have entered upon their lives' work does not make the gift non-charitable. *In Re, Davidge Will*, 193 N. Y. Supp. 245.

The court in the latter case, in the concluding part of the opinion, said:

We see nothing in the clause of the will above quoted which prevents the expenditure of income.

"A construction which is fairly within the rules of law and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity should be preferred." *Matter of Robinson*, supra.

The clause fairly construed with this principle in mind means that income loaned out to a beneficiary if repaid shall immediately be again applied to the use of another beneficiary for the educational use provided for in the will. There would then be no resulting accumulation with addition to the capital amount; nor would there be any withdrawal of income from use. There being no accumulation, there is no violation of the statutes with reference to prohibited accumulations.

In view of the foregoing authorities, we hold that the provision in the trust instrument authorizing the trustees to make loans to

employees and former employees of the W. S. Tyler Co. and their families who are in need of assistance does not render the gift noncharitable.

Respondent contends that the W. S. Tyler Co. might at some future date cease to exist and there would be no employees of that company who could avail themselves of the benefits of the trust and hence the trust would terminate and the fund would revert to the heirs of the settlor of the trust.

Zollmann, in his "American Law of Charities", from which we have already quoted, says in section 647:

> While a charitable trust may be terminated by adverse possession, the exhaustion of its funds, the extinction of its beneficiaries, and the accomplishment of its purpose, it will not, once created, revert to the donor or his heirs in the absence of conditions to that effect.

It will be noted there are no provisions providing for a reversion in the trust instrument. Hence we hold that respondent's contentions on that point are without merit.

Respondent also contends that, even though it be held that the gift here in controversy was exclusively for charity, nevertheless the gift was not irrevocable, and that only irrevocable gifts are deductible. It is true that decedent did not expressly state in the written instrument by which the gift was made that it was irrevocable. The rule as we understand it to be in a situation of this kind is this: Powers to alter, modify, or amend and powers to revoke and terminate an express trust are created by stating in the trust instrument that the settlor reserves the power to alter, modify, or amend the trust or reserves the power to revoke and terminate the trust. When such language is not used such powers are not reserved. The rule is stated in *Title Guarantee, etc., Co.* v. *Honen*, 219 N. Y. 468, as follows:

> If a trust was created, then however voluntary and without consideration its creation may have been, it could not be revoked in the absence of express reservation of the power to do so without the consent of the beneficiary, and the beneficiary could at once compel execution of the trust for its benefit.

See also *Thurston, Petitioner*, 154 Mass. 596; *Gray* v. *Union Trust Co.*, 171 Cal. 637; *Russell's Executors* v. *Passmore*, 127 Va. 475; *Dickerson's Appeal*, 115 Pa. St. 198.

Respondent contends that the following language in the written instrument reserved such broad powers to the donor as to be tantamount to a power to revoke and terminate the gift:

> * * * a record to be kept of what they do and submitted to me from time to time and whenever I request for my approval or the approval of Mr. Squire, my attorney.

In construing the meaning of the clause set forth above, we should examine the instrument as a whole and should not take this par-

ticular clause out of its context and attempt to ascertain its meaning without reference to the remaining provisions of the written instrument.

The declaration of trust begins with a statement of the donor's reason for creating the trust ("realizing the hard times and the wants of many of the present and former employees"). It then proceeds to create the fund which is to constitute the corpus of the trust and to vest the same in Proctor Patterson and Earl Disbro, petitioners herein, to hold and operate as trustees. The instrument next sets forth how the fund is to be used and the class of persons who are to be entitled to its benefits ("as a trust fund to be used to loan to or assist employees, former employees, etc."). The precise method of operating the fund within these general directions is left wholly within the discretion of such trustees ("as in their judgment may be of assistance"). Then after the fund has been designated, the trust imposed therein, the trustees thereof named, and the purpose, method, and beneficiaries of its operation have been designated, the donor goes on to state that the trustees are to keep a record of the actions which they have taken thereunder and submit the same to the donor or her attorney when requested, for approval. We do not construe this language as the reservation of a power to revoke the trust. It is simply the reservation of a visitorial power recognized by the common law.

Cases cited by respondent in support of his contention are *Security First National Bank of Los Angeles, Executor*, 28 B. T. A. 289; *First National Bank of Boston, Administrator*, 25 B. T. A. 252, and *W. L. Honnold*, 30 B. T. A. 774, but we think they are distinguishable, for in the last two the express power of revocation was reserved and in the *Security First National Bank* case the donor, Huntingdon, reserved such broad powers as to the management, use, and benefit of the property during his life that we held that the income of the trust must be included in computing the net income of the grantor. We hold against respondent on this point.

Respondent urged further that the gift is not deductible because the trust was not operated during the taxable year. We think it would be too narrow an interpretation of the statute to hold that, where a taxpayer has made a contribution to a trust to be organized and operated exclusively for religious, charitable, etc., purposes, as provided by the statute, the trust or corporation or foundation would have to begin operation at once in order for the taxpayer to receive the benefit of the deduction in the taxable year; necessarily some time must elapse to perfect organization if the trust, corporation, or foundation is not already in operation.

The written trust agreement was made November 20, 1931, and the money was paid over December 1, 1931. In January 1932 the

objects of the benefaction began to receive its benefits, which was probably as quick as was possible.

In *William T. Bruckner et al., Trustees*, 20 B. T. A. 419, the respondent made substantially the same contention as he is making here, but we held against him. Following our decision in that proceeding, we hold against respondent's contention that the contribution here in question is not deductible because the trust did not actively operate in 1931. Cf. *Morgan* v. *Nauts* (Dist. Ct., N. Dist. Ohio, Apr. 19, 1928), 6 A. F. T. R. 8011.

We hold that the contribution was deductible to the extent of the 15 percent limitation provided by law.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SEAWELL dissents.[1]