First National Bank of Akron, Trustee, Appellee, *v.* Unknown Heirs of Donnelly, Jr., et al., Appellees; Dunn et al., Appellants.

(No. 4429—Decided April 28, 1954.)

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for appellee First National Bank of Akron, trustee.

*Mr. William M. Byrnes,* for appellee Edward F. Hoban, Archbishop.

*Messrs. Griswold, Leeper, Miller & Corry,* and *Messrs. Walker, Alpeter, Reed & Diefenbach,* for appellant Joseph B. Dunn.

*Mr. Mark F. McChesney,* for appellant Della Seltzer McDermott.

DOYLE, P. J. This was an action for a declaratory judgment, brought in the Probate Court of Summit County by the First National Bank of Akron, in its capacity as successor trustee under the last will and testament of James Henry Donnelly, Jr., deceased. The court's direction was sought in respect to undistributed funds held by the bank under the will.

Donnelly died testate on August 1, 1924. He made testamentary provision for certain individuals. He likewise provided for the disposition of the corpus of the trust, in the event that none of the named individuals should survive until the date of final distribution. None survived, and, as a consequence, the following provision in the will became operative:

"In the event of the decease of my said son, James Henry Donnelly, Junior, prior to final distribution to him of the trust estate, leaving neither widow nor issue of his body surviving, then and in that event, my said trustee is authorized and directed to disburse the principal of the trust estate and any accumulated income therefrom to a Catholic Orphanage located in Summit County, Ohio; if there be none located in said county, then my said trustee is authorized and directed to expend the entire principal and accumulated income from said trust estate for the establishment of such a Catholic Orphanage in said county and state."

Two of the defendants, by their answers, as well as by the proof, are the sole remaining heirs at law of the testator. They seek the money under the laws of

descent and distribution, through the medium of a resulting trust. The Archbishop-Bishop of the Diocese of Cleveland of the Catholic Church, Edward F. Hoban, likewise answered and joined in the prayer of the trustee's petition: that the funds be given over to the Parmadale Orphanage (a Catholic orphanage), located in the adjoining county of Cuyahoga.

It is established that:

(1) The corpus of the trust awaiting distribution is approximately $21,000.

(2) There is presently no Catholic orphanage in Summit County, nor was there one when the will was executed.

(3) The amount is insufficient to establish such an orphanage.

(4) Parmadale Catholic Orphanage, located in Cuyahoga County, provides care for needy children, regardless of creed or color, in the Cleveland diocese of the Catholic Church, which diocese covers eight northern Ohio counties, including, among them, Summit County. The orphanage is under the direction and supervision of the Archbishop-Bishop of the Diocese of Cleveland.

(5) The diocesan orphanage, Parmadale, was originally founded in Cleveland, Ohio, in the year 1852, under the name of St. Vincent; it was moved to Parma, Ohio, in 1924, and the name was then changed to "Parmadale."

(6) In the years intervening between 1942 and 1953, a yearly minimum of 51, and a maximum of 79, children were cared for from Summit County.

(7) The children are "maintained, fed, boarded, and educated," with the physical facilities of an "administration building, a rectory, a school, a dining hall with dining room for each particular cottage, * * * a laundry, a power plant, * * * a gymnasium * * *, an open-air center for inclement weather, and thirty-five houses

(cottages)," and there are "40 (children) in each cottage."

(8) "The * * * cost is met by Catholic Charities Corporation" and also by money from other sources— to wit, "wills, bequests and special gifts," coming from persons of Catholic faith, and also from persons of other faiths.

(9) The creation of a Catholic orphanage in Summit County is not contemplated by any person or organization presently extant.

The Probate Court, upon hearing, entered its judgment, holding that: (1) the defendants Della Seltzer McDermott and Joseph B. Dunn, a niece and a nephew of the testator, are the only heirs, "but have no right, title or interest in and to the said property and fund * * *"; (2) the money now held by the trustee bank "shall not be distributed, but shall be held and administered by it under the continuing order and direction of this court for the care, maintenance and support of Catholic orphans of Summit County, Ohio, who may be cared for at Parmadale, or any other home, public or private, or any institution of similar character or purpose, in such amounts as may be ordered by the court, provided, however, that should a Catholic orphanage be hereafter established in Summit County, Ohio, then the said remaining trust fund, on the order of this court, may be turned over to such Catholic orphanage."

We entertain the appeal on questions of law, and are met with the following inquiry posed by the appellants: "Did the Probate Court of Summit County correctly order the disposition of the corpus of the trust—(a) by virtue of the doctrine of deviation? (b) by virtue of any doctrine, other than deviation, and including cy pres?

As so often happens, the trial court, in the instant

case, was forced to balance antagonistic considerations. Its duty was to protect, if possible, the social benefits to be derived from a charitable endowment; to evaluate the interests of contesting heirs; and to effectuate the donor's intention.

We now proceed to analyze the facts in the light of the law and the judgment of the trial court.

1. The gift of the testator was a gift for charity. Property given to an orphanage, or for the establishment of an orphanage, is a gift to "An institution or asylum for the care of orphans" (Webster's New International Dictionary, Second Ed.), and contains the essentials of benevolence in their ever-varying diversity.

2. "Gifts for charitable purposes have always been favored in equity, and trusts created for such purposes are carried into effect upon broad liberal principles of equity jurisprudence under circumstances where a purely private trust might fail." *Gearhart* v. *Richardson*, 109 Ohio St., 418, paragraph 2 of syllabus, 142 N. E., 890.

3. In some instances a donor's gift is insufficient in amount to carry out his specific directions for the application of his property to charitable purposes. Courts then are confronted with the question as to whether the trust shall fail and the property given in compliance with an alternative grant in the will, or, in the absence of such alternative disposition, held in resulting trust for the next of kin, or whether the doctrine of deviation or cy pres may be applied. If either one or the other of the latter two doctrines may be employed, the trust may be sustained in spite of the insufficiency of funds.

4. To accomplish the purpose of a charitable trust and to effectuate its administration, a court of equitable jurisdiction "will direct or permit the trustee

\* \* \* to deviate from a term of the trust if it appears to the court that compliance is impossible \* \* \*.'' Restatement of the Law of Trusts, Section 381. Also, ''If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.'' Restatement of the Law of Trusts, Section 399. This is known as the doctrine of cy pres.

5. If the primary purpose of a charitable trust can be accomplished by deviation from express terms in the instrument of creation, in respect to purely administrative matters, it becomes unnecessary to analyze the facts in the light of the doctrine of cy pres, and, in doing the latter, determine whether the donor manifested a general charitable intent, and, if so, whether the property should be used for an approximate charitable purpose (a purpose as nearly as may be like the purpose stated by the donor) when it is impossible to exactly carry out his specific intent. See: 3 Scott on Trusts, Section 399; 2A Bogert on Trusts and Trustees, Section 441; *Heinlein* v. *Elyria Savings & Trust Co., Exr. & Trustee,* 75 Ohio App., 353, 62 N. E. (2d), 284.

6. While we have nothing in the record before us to show the condition of the affairs of the donor at the time of the execution of his will, nor at the time of his death, and while we have no way of prying into the recesses of the donor's mind at those times, we can ''look deeper than the mere words of this donation, and, through them, see its spirit.'' *McIntire's Admrs.*

v. *City of Zanesville,* 17 Ohio St., 352, at p. 363. The primary object and intent of the donor, as we read his will, was to care for Catholic orphans from Summit County, Ohio. If there was a Catholic orphanage located in this county at the time of his death, he wanted to help it. If there was none, he wanted to create one. There is nothing before this court to indicate that the donor intended to limit the use of his property to such an extent as to defeat the very object designed, in the event that the funds were insufficient to administer his charity in the particular mode designated.

It appears that the judgment rendered by the trial court was not a deviation from the founder's intention as to the objects of his charity, but only from the founder's directions as to the management of his money—a varying of administrative duties—which were no doubt originally meant to be governed by circumstances. It is to be noted that the founder of this charity made no secondary provision for a gift of these funds in the event of the failure of his charity.

It is well established that a departure from the letter of a will, in regard to the place where a charity is to be conducted, is of no more consequence than a variation from the prescribed mode in which it shall be conducted, where there is no provision for forfeiture, since the absence of a provision for forfeiture, in case of noncompliance or impossibility of compliance, with a direction in a will with regard to a charitable trust, shows that the testator did not intend that the gift should revert on a failure to comply, or an inability to comply, while the carrying out of his dominant purpose is practicable. See: 10 American Jurisprudence, Charities, Section 129, and cases cited.

The furnishing of money from this trust for the care of Summit County Catholic orphans in the Catholic orphanage of Parmadale, located in the adjoining

county of Cuyahoga, does, we think, carry out the primary intention of the testator. .

We find our conclusions consonant with general principles of law and equity pronounced by other courts of this state. We quote from one:

"We think the rule to be well established in this country, in construing charitable trusts, that if the founder thereof describes in the instrument by which he creates the charitable trust the general nature thereof and names the class of beneficiaries, he may leave the details of its administration to be settled by the trustees, under the guidance of a court of equity * * *, and that where exact conformity to the plan of the person who has provided by his will for the charitable trust cannot be carried out in exact detail such object will be attained and duty performed with as close approximation to the original plan as is reasonably practicable, provided the same is in conformity and consistent with the charitable purposes named by the founder; that, at least, a court of equity will not permit such charitable trust to fail because of some slight deviation or change from the original plan, if the general purpose named by the creator of the trust is still attained." *Gearhart* v. *Richardson, supra,* at p. 435.

See also: *Craft, Exrx.,* v. *Shroyer,* 81 Ohio App., 253, 74 N. E. (2d), 589 (trust sustained); *Allen, Admr.,* v. *City of Bellefontaine,* 47 Ohio App., 359, 191 N. E., 896 (trust denied).

A systematic categorization of cases involving the principles of cy pres and deviation in the various states of the Union would be almost impossible. In some cases, the courts, when sustaining trusts, fail to distinguish the two rules of equity jurisprudence. In others, the facts are such that perhaps both theories could be applied in sustaining a charitable trust.

Under the facts in the instant case, we affirm the

judgment of the trial court, as heretofore stated, on the theory that the court had the power "to permit deviation from the settlor's directions as to mere methods of administration, where the charitable objective is not changed but rather the means and methods of accomplishing it are varied." 2A Bogert on Trusts and Trustees, Section 431, at p. 317.

Whether the doctrine of cy pres could also be applied in the instant case, we do not decide. The two doctrines, however, should not be confused.

*Judgment affirmed.*

STEVENS and HUNSICKER, JJ., concur.