FENN COLLEGE ET AL. *v.* NANCE ET AL.

[Cite as Fenn College v. Nance, 4 Ohio Misc. 183.]

(No. 816473—Decided September 27, 1965.)

Common Pleas Court of Cuyahoga County.

184

*Messrs. Baker, Hostetler & Patterson, Mr. Howard F. Burns, Mr. Alan G. Rorick* and *Mr. Stephen H. Madsen,* for plaintiffs.

*Mr. Carl A. Mintz,* for defendant Cleveland State University.

*Mr. William B. Saxbe,* attorney general, and *Mr. Paul Marshall,* for defendant state of Ohio.

*Mr. Donald H. Hauser* and *Mr. Carl Chancellor,* for defendant Cleveland Electric Illuminating Co.

*Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. William W. Taft,* for defendant Bickford.

*Messrs. Henderson, Quail, Schneider & Peirce,* for defendant Young Men's Christian Association.

*Mr. William J. DeLancey* and *Mr. William F. Williams,* for defendant Patton.

*Messrs. McAfee, Hanning, Newcomer, Hazlett & Wheeler* and *Mr. H. Vincent E. Mitchell,* for defendant Distribution Committee of the Cleveland Foundation.

LYBARGER, J. This is an action brought under favor of Chapter 2721 of the Revised Code, for a declaratory judgment with respect to certain questions in the administration of trusts. The plaintiffs invoke not only the inherent jurisdiction of the court, sitting in equity, but also the provisions of Section 2107.46, Revised Code, which permit fiduciaries to seek directions of the court respecting trust property, and Section 2307.21, Revised Code, relating to class actions of common or general interest to many persons when it is not practical to bring all of them before the court.

The plaintiffs are Fenn College (hereinafter called Fenn), a nonprofit corporation of Ohio, and the trustees and members of Fenn.

The defendants, Nance, Bartunek, Johnson, Smith, Lambright, Silverstein, Chase, Sloan and Taft are the trustees of The Cleveland State University (hereinafter referred to as CSU), a state university created December 18, 1964, by authority of Chapter 3344, Revised Code. William B. Saxbe is Attorney General of Ohio. The defendants The Young Men's Christian Association of Cleveland, Ohio, The Distribution Committee of The Cleveland Foundation, The Cleveland Elec-

tric Illuminating Company, The White Motor Company, George P. Bickford and Thomas F. Patton are donors to Fenn in times past and representatives of the class of such donors who are too numerous to be included herein.

The petition states that Fenn and the trustees of CSU have entered into an agreement and plan of transition (hereinafter called the Agreement) by the terms of which the facilities, faculty and staff of Fenn will serve as a nucleus for the establishment of CSU; Fenn will convey to the state of Ohio as a gift the land and buildings of Fenn's present campus, and transfer to the trustees of CSU all of Fenn's furniture, fixtures and equipment. The trustees of CSU will pay Fenn $260,000, maintain a "Fenn College of Engineering" as part of the new university, and continue to offer, wherever feasible, the socalled Fenn Plan for co-operative education. After the Agreement is consummated Fenn will cease to operate a college and by amended articles of incorporation become "Fenn Educational Foundation," with the purpose of wide support of educational, literary, charitable and scientific activities and projects.

The plaintiff prays that the court (a) recognize the representative capacity of the defendant donors to defend on behalf of all donors to Fenn as a class; (b) declare that Fenn and the trustees of CSU have full power to enter into said Agreement; (c) authorize performance of the Agreement; (d) decree that all assets to be transferred are the absolute property of Fenn and that donors over the years have no interest or claims therein and are precluded from any cause of action against Fenn or its trustees or members for voting to consummate or for consummating the Agreement or for bringing Fenn's academic functions to a close; (e) authorize Fenn to cease functioning as an academic institution; (f) assure that all assets of Fenn remaining after the transfer are Fenn's absolute and exclusive property, free of any claims of past donors; (g) declare that after the effective date as defined in the Agreement Fenn is free to amend its articles of incorporation to continue as "Fenn Educational Foundation."

At the outset the court has not the least difficulty in deciding the question of jurisdiction. Obviously a court of equity has inherent jurisdiction to deal with questions involving trusts and trustees such as are here presented. This power is forti-

fied by the statutes cited in the first paragraph above. One purpose of Section 2721.05, Revised Code, is to permit an action for a declaratory judgment on issues concerned with construction of trusts and authority of trustees. Section 2107.46, Revised Code, authorizes actions by fiduciaries for directions of a court as to property held in trust.

It is clear from the pleadings and the evidence that this action is concerned with questions of common and general interest to many individuals. This applies to a large number who in the past have made donations to Fenn without attaching any conditions or restrictions thereto, and to a substantial number of donors who have restricted Fenn in the use of their gifts, as they might do within the contemplation of Section 1702.35, Revised Code. As to all the numerous donors over many years, this is a class action. It is impractical if not impossible to bring all of them into court. The law of Ohio anticipates such a situation and in this case permits the making of a reasonable number of donors as representatives of the class of all who in the past have given donations to Fenn. The court finds that this action is one included in Section 2703.14, Revised Code, which permits service by publication under the circumstances above narrated, that the statute has been fully complied with and that all donors who have or may claim an interest of any sort in the real or personal property of Fenn are properly before the court.

The court observes that the defendants who are trustees of CSU and William B. Saxbe, attorney general of Ohio, have answered, admitted the allegations of fact in the petition and joined in the prayer thereof. The defendants The Distribution Committee of The Cleveland Foundation, The Cleveland Electric Illuminating Company, The White Motor Company, George P. Bickford and Thomas F. Patton and The Young Men's Christian Association of Cleveland, Ohio, have filed separate answers in which each says essentially that it or he is a member of the class of donors; has in the past made gifts to Fenn without reservation or restriction; by reason of such donations it or he claims no right, title or interest in the property of Fenn to be transferred to CSU; and has no claim and will not assert any against Fenn, its trustees or members as a result of their entering into the Agreement or the cessation by Fenn of its activities as a

functioning college. The answer of the Y. M. C. A. of Cleveland contains an interesting history of its development, long-continued education program, the establishment of "Y-Tech" in the early 1920's, the transition to "Fenn College" in 1929, its incorporation in 1936 and the college's formal separation from the Y. M. C. A. in 1951. It takes the same attitude as the previously named class of donors and claims no interest in Fenn's assets and will assert no claim as a result of the Agreement. For want of information the above mentioned class of donors and the Y. M. C. A. deny the other allegations of the petition.

The court finds that the facts are as alleged in detail in plaintiffs' petition. For many years Fenn has carried on in this community a program of undergraduate instruction in the liberal arts, sciences and professions. Through the generosity of the Y. M. C. A., Sereno P. Fenn and a host of other individuals and institutions, the college has been able to assemble a competent and dedicated faculty and efficient staff, and to acquire real and personal property and essential equipment of considerable monetary value. With the aid of many employers in greater Cleveland, Fenn has maintained a co-operative education program that has enabled students to earn their way while getting a college education. It has, throughout the passing years, served many young men and women and also folks beyond the usual college age who, but for its ministrations, might have lacked the boon of higher education. Fenn, therefore, has had a deep impact upon the life of greater Cleveland that can never be erased. Appropriately the court may paraphrase the langue of the Latin poet Horace and say that Fenn has "builded a monument more lasting than bronze."

On December 18, 1964, the General Assembly created Cleveland State University. Chapter 3344, Revised Code, vests government of CSU in nine trustees (defendants herein), gives them authority to accept donations of lands, moneys and other personal property and hold the same in trust for the university, and enter into agreements incidental to its operation. Section 2 of H. B. No. 2 (130 Ohio Laws Pt. 2) also made this specific grant of authority:

"Subject to rules and regulations adopted by the Ohio Board of Regents, the board of trustees of Cleveland State Uni-

versity may enter into and fulfill contracts and agreements with the board of trustees of Fenn College for the transfer of lands, buildings, and equipment of Fenn College to the state for the use of Cleveland state university.''

With the proposal to create CSU, and now with its establishment as a university supported by the state of Ohio, it has become obvious that Fenn's financial contributions have been curtailed. It is a logical conclusion of fact from the evidence that, with Fenn lacking an adequate endowment, depending largely on student fees and facing rising costs of operation, the change of functions by Fenn and the adoption of active educational functions by CSU is highly desirable not only from the standpoint of both but also because it is in the public interest in promoting the cause of education in northeastern Ohio. It will make possible a strong university built upon the foundation laid by Fenn and having a much higher potential in the field of public education in the future.

The court has studied the Agreement and plan of transition and finds that it is carefully drawn fully to protect the interests of Fenn and CSU and to accomplish the transition between the two institutions in an efficient manner.

Granted that present conditions suggest the desirability of the Agreement, and that its terms are fair in every respect, a pertinent legal question is whether Fenn has authority to make a contract transferring most of its physical assets and merging its faculty, staff and facilities with those of another institution?

As a nonprofit corporation Fenn has the wide general authority granted it in Chapter 1702, Revised Code. The court need not belabor the fact that Fenn, under Section 1702.12, Revised Code, may make donations for ''charitable, scientific, literary, or educational purposes.'' It may ''sell, exchange, transfer, and dispose of property of any description.'' It may make contracts and do all lawful things incidental to its general purposes. Fenn's articles of incorporation give it broad purposes and plenary power to accomplish them. Section 1702.39, Revised Code, specifically gives a corporate body such as Fenn power to transfer any assets ''without the necessity of procuring authorization from the court.'' Since the transfer here involves by far the larger part of Fenn's assets and the change of Fenn's name and functions, Fenn has complied with the re-

quirements of Section 1702.39, Revised Code, as a corporation not for profit and has also complied with the express requirements of Section 1713.25, Revised Code, in giving more than 30 days actual notice to each trustee of a special meeting of the board, at which meeting more than a majority of the board of 34 members attended and voted for such changes without a single dissenting vote. Finally, the 105th General Assembly, as noted above, gave statutory authority to the trustees of CSU specifically to make a contract with Fenn such as is now embodied in the Agreement.

The evidence establishes that the Ohio Board of Regents, in the exercise of the authority granted in Chapter 3333, Revised Code, has approved the Agreement and found it to be in accord with its regulations, as contemplated by Section 2 of H. B. No. 2 (130 Ohio Laws Pt. 2).

It is abundantly clear that Fenn has full and complete legal authority and its trustees and members ample discretion to enter into the Agreement and thereby transfer most of its assets to CSU. It need not even have resorted to the court to have such action sanctioned.

May Fenn legally carry on by changing its name to "Fenn Educational Foundation" and by modifying its purposes and powers as proposed in amended articles of incorporation, appended to its petition as exhibit 2? The answer is an unequivocal "yes." Section 1702.38, Revised Code, gives such authority to Fenn, as a corporation not for profit and Section 1713.25, Revised Code, dealing with changes of name and functions of a college was fully complied with in the meeting of September 14, 1965, as pointed out above, and as noted hereafter equity sanctions it. The evidence establishes that under its new name Fenn will carry on as a nonprofit corporation supporting worthy educational, literary, charitable and scientific endeavors.

But what of Fenn's donors of past years? Do they have any present interest in Fenn's assets? May any givers be heard to complain that the carrying out of the Agreement and the subsequent change of name and program of Fenn violate either the spirit or the terms of their donations? In spite of the fact that the representative general donors in their answers have disclaimed any interest in Fenn's property, and that those who have made gifts for specific purposes have almost unani-

mously waived the observance by Fenn of their former conditions, the litigants deserve an answer to the questions just raised.

There is nothing more certain in life than change. As a wise man has said: "New occasions teach new duties; time makes ancient good uncouth." What is reasonable and helpful today may not remain so with the passing of the years. No man can accurately anticipate the needs of the next generation. Equity has long recognized this, and in dealing with trusts, both private and charitable, has not hesitated to exercise its inherent power over the administration of trusts in order to perpetuate the purposes of settlors in the face of changed conditions. This has been especially true as to charitable trusts. In *Gearhart* v. *Richardson* (1924), 109 Ohio St. 418, the Ohio Supreme Court said (p. 434):

"Charitable trusts are entitled to a liberal and favorable consideration and will receive a more liberal construction than is allowable to private trusts or in cases of gifts to private individuals."

On page 435 the court said:

"We think the rule to be well established in this country, in construing charitable trusts, that if the founder thereof describes in the instrument by which he creates the charitable trust the general nature thereof and names the class of beneficiaries, he may leave the details of its administration to be settled by the trustees, under the guidance of a court of equity (*In re Upham Estate,* 127 Cal. 90, 59 Pac. 315), and that where exact conformity to the plan of the person who has provided by his will for the charitable trust cannot be carried out in exact detail such object will be attained and duty performed with as close approximation to the original plan as is reasonably practicable, provided the same is in conformity and consistent with the charitable purposes named by the founder; that, at least, a court of equity will not permit such charitable trust to fail because of some slight deviation or change from the original plan, if the general purpose named by the creator of the trust is still attained."

Now two doctrines have been developed in equity to aid in sustaining trusts under altered circumstances, *cy pres* and

*deviation.* *Cy pres* means "as nearly as may be." The doctrine is a simple rule of judicial construction, designed to aid the court to ascertain and carry out, as nearly as may be, the intention of a donor of a gift to provide for the future. It is properly applied only where it is or has become impossible beneficially to apply the property left by the donor in the exact way in which he has dedicated it to be applied, and it can only be applied beneficially to similar purposes by different means. See 15 American Jurisprudence 2d, Sections 131-134; Scott on Trusts, Section 399, p. 2824.

Deviation is sanctioned by a court of equity to permit a departure from the terms of a trust where compliance is impossible or illegal, or where changed circumstances, not known or anticipated by a donor, would defeat or substantially impair the purposes of the trust. See: Scott on Trusts, Section 381, page 2738; 2 Restatement of Trusts 2d, Section 381, page 273. For a learned dissertation on the distinction between the two doctrines see *Craft, Exrx.,* v. *Shroyer* (1947), 81 Ohio App. 253, at page 272, et seq.

In Restatement of the Law 2d, Trusts, Section 167, page 351, it is stated:

"Sec. 167.   Change of Circumstances

"(1) The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust."

In the instant case it is clear that the doctrine of deviation should be applied (1) to declare that in view of altered circumstances Fenn is fully justified in changing the form of its corporate existence while still carrying on the broad educational purposes of its charter; and (2) to make it clear that the transfer of assets and facilities to or for the use by CSU is a justified departure from the original object of generous gifts made in the past by so many, but not a material change in the charitable uses intended by such donors, and that therefore no donor may complain or hereafter have any cause of action against Fenn,

its trustees or members growing out of the execution or carrying out of the Agreement.

The right of an educational institution to transfer its property to another such institution has not been passed on before in Ohio. There are, however, numerous Ohio cases which have applied the doctrine of deviation to permit changes affecting educational institutions. See: *McIntire's Admrs.* v. *City of Zanesville* (1867), 17 Ohio St. 352; *Findley* v. *City of Conneaut* (1945), 145 Ohio St. 480; *Kingdom* v. *Saxbe* (1958), 82 Ohio Law Abs. 6; *First National Bank* v. *Unknown Heirs of Donnelly* (1954), 96 Ohio App. 509; *Cleveland Musem of Art* v. *O'Neill* (1955), 72 Ohio Law Abs. 11.

In *People* v. *President and Trustees of College of California* (1869), 38 Cal. 166, the court passed upon the question of whether college trustees might transfer a college's land to the state under circumstances rather similar to those in the present case. The court sustained that right, and ruled out any interest of past donors in sums they had donated, or in the college's property or in any right to control the same. In part the court said:

"* * * it is quite evident the Trustees have an unlimited discretion in respect to the sale or other disposition of the corporate property, for the advancement of the interests of the College; and it is equally plain that so long as they act in good faith, their discretion, in this respect, is absolute. They alone are to decide whether the proposed disposition of the property will be 'most conducive to the prosperity of the College.' There is no room for argument on this point. * * *"

In *Trustees of Rush Medical College* v. *University of Chicago* (1924), 312 Ill. 109, 143 N. E. 434, where the court was dealing with a similar situation to the one here presented, it said in part:

"* * * The transfer of the property of the college to a similar charity under conditions which assure continuation of the use of the property in accordance with the purposes of the charter of the college, so that the fulfillment of the charitable purpose will be accomplished and the efficiency of this educational institution increased, is not a diversion of the funds to a purpose foreign to that to which they were dedicated. * * *"

The court concludes that Fenn is fully justified not only by

statute but also under the equitable doctrine of deviation (1) in amending its charter to change its name, modify its purposes and alter its program of operation as proposed; (2) in transferring its property to or for the use of CSU as called for in the Agreement, and (3) in taking all steps necessary and incidental to effectuating the Agreement. Finally it is clear that those who have been so generous to Fenn in the past have the assurance that their charitable intents will be perpetuated, and, although they have no legal title or interest in any of Fenn's assets, that their donations will continue to advance the cause of education.

For the above reasons the court grants the prayer of the plaintiffs' petition and has this day rendered a declaratory judgment accordingly.

*Judgment accordingly.*