CHARLES W. RICHARDSON & others, executors, *vs.* ESSEX
INSTITUTE & others.

SAME *vs.* HARVARD COLLEGE & others.

Essex.    January 20, 1911. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, BRALEY, & RUGG, JJ.

*Charity.   Devise and Legacy.*

If a gift is made by will to a certain charitable, benevolent, literary or educational
corporation and the gift constitutes a public charity irrespective of whether the
corporation designated accepts it or not, the charity will not be allowed to fail
for want of a trustee to administer it.

Each of two sisters owned a one half interest in certain real estate and personal
property.   Each made a will, which, without mentioning the will of the other,
gave all of her property to her sister for life, and, after her sister's death, by a
paragraph containing over seven hundred words which excepting for trifling
variations were identical with the words used in her sister's will, gave her one
half interest in the real estate and personal property above mentioned to a cer-
tain corporation for charitable purposes.   After the death of both sisters, in
suits in equity by the executor of the will of one and the administrator with the
will annexed of the estate of the other for instructions, it was *held,* that there
was no doubt that a joint scheme was contemplated by the two sisters, and that
it was not impossible to administer the separate gifts as one public charity.

The mere fact that a gift for a charitable purpose is intended by the donor also as
a private memorial to members of his family does not impair its public character
or legal validity.

The owner of a house, which, although to some extent remodelled, was a good
example of the architecture of the Revolutionary period, which stood in the
midst of ample grounds and gardens and was furnished with many articles con-
stituting a collection of household antiques, the house and its contents being of
educational interest and value as a kind of museum and the grounds being so
situated and of such character as to be adapted for use as a small park or open
space and, so used, of substantial benefit to the public, by his will gave the
house and grounds, gardens and contents of the house to a corporation, directing
that "the house may not in the least degree be dismantled, but stand forever as
a memorial to the family of" an ancestor of the testator, that it be kept open to
visitors who might wish to see the collection of household antiques, with a cus-
todian and caretaker in charge, that there be no public meetings or crowded
receptions, that the gardens be used for the cultivation of what might be useful
in the study of botany and that the grounds be kept open for the enjoyment of
the public so far as practicable and be freely used by all students of botany
whether in public or private schools.   Provision was made for a possible exten-
sion of the grounds by purchase of land adjoining, and for the employment of
an instructor and for free lectures in botany subject only to such rules and
conditions as might be deemed necessary for the best interests of the classes.
*Held,* that the gift was for educational and other purposes and came within the

scope of what constitutes a public charity, although the motive in making it was to establish a perpetual memorial to the testator's family.

Gifts for public educational purposes constitute public charities.

Two BILLS IN EQUITY for instructions, filed in the Probate Court for the county of Essex on October 15, 1909, respectively by the executors of the will of Eliza O. Ropes and by the administrators with the will annexed of Mary P. Ropes, both late of Salem and sisters.

The petitioners alleged in substance that the Essex Institute declined to accept the trusts created by the following provisions in the wills, and sought instructions as to the disposition of the property.    Material portions of the wills were as follows : *

" I give and bequeath to my sister . . . all the property both real and personal of which I die possessed, to have and to hold the same, so long as she shall live and to invest or dispose of the income as she may wish.

" Upon the decease of my sister . . . I desire that the following disposition shall be made of my real and personal property.

.    " 1.    To the Essex Institute, Salem, Massachusetts, I give all my one half interest in the house No. 318 Essex street, the Nathaniel Ropes homestead for four generations, with the ground under and the garden attached thereto, my one half interest also in the furniture, carpets, silver-ware, china, portraits and other pictures, books, trunk of antique clothing, watches, jewelry, bric-a-brac, etc., etc., that the house may not in the least degree be dismantled but stand forever as a memorial to the family of Nathaniel Ropes.    It is my wish that the house shall be kept open to visitors who may wish to see the collection of household antiques and a custodian shall live in the house for the care and preservation of the same and its contents.    It is my wish that no public meetings or crowded receptions shall be held in the house and that visitors shall not be admitted in crowds.    It is my wish that the garden attached to the house shall be used for the cultivation of such flowers, plants, shrubs, trees, etc., as may be useful in the study of botany, leaving always the forest

---

* The following quotation is from the will of Eliza O. Ropes.    In the will of Mary P. Ropes, the same provisions are made, *mutatis mutandis*, in practically identical words.

trees on the fore-ground as they have been for many years and the grounds shall be kept open for the enjoyment of the public so far as practicable and shall be freely used by all students of botany whether in public schools or private classes.  To encourage an interest in the study of botany in the city of Salem, it is my wish that as good an instructor as can be obtained shall hold classes in the house annually for as many weeks or for as many lectures as the management of the Institute may approve, the class in no instance to exceed the capacity of one of the eastern rooms upon the lower floor of the house.  As I shall hereafter provide for the expense of these lectures, it is my wish that the instruction shall be free to all who desire to benefit by it, the management of the Institute making only such conditions and rules as may be deemed necessary in furthering the best interests of the class. In order that the Essex Institute may, without financial embarrassment, carry out the intention of the testatrix in making the above bequests, I give and bequeath to the Essex Institute the following real and personal property, the income of which to be applied to the support of the objects named above.

" a.  All my one half interest in the house next east of the homestead, with the ground under and the yard attached thereto known as No. 316 Essex Street.  If at the expiration of three years or any time thereafter, the management of the Essex Institute shall find that there has been a sufficient accumulation of funds to provide for the perpetual care of the homestead and grounds, the house No. 316 Essex Street may be taken down and the grounds thrown open to improve the appearance of the street.

" b.  All my one half interest in seven houses on Broad Street, Nos. 19½ to 25½ with ground under and attached.

" All my one half interest in six houses on Hathorne street, Nos. 5½ to 9½ in all five and No. 8 on the west side of the street with ground under and attached to all the houses.

" All my one half interest in Orne Square, the houses on both sides of the street with the ground under and attached to all the houses.

" My one half interest in a lot of land in Danvers, Essex County, Massachusetts.

" My one half interest in the Boston Water Power Stock.

" All my shares of stock in the Edison Electric Illuminating Company of Boston.

" The income of the above investments shall be applied to the care and preservation of the homestead and grounds No. 318 Essex street and should there be a surplus annually or at the end of any fiscal year, it shall go toward the establishment of a fund to meet any extraordinary expense that may arise in the future, or to purchase adjoining property should there be an opportunity so that the lot may acquire something of its original dimensions and finally open through to Federal Street.

" *c.* My Old Colony Railroad Bonds, six in number ($6000.00), the income to be applied to the course of lectures or class instruction in botany. The above gifts to the Essex Institute are on the express condition that said Essex Institute substantially carry out and fulfill the above directions and wishes of Testatrix as above set forth."

In the Probate Court, *Harmon,* J., made a decree that the gifts constituted valid public charities, and that he would appoint trustees to administer them " as nearly as possible according to the intent and purpose " of the testatrixes.

On appeal to this court, the cases were heard by *Morton,* J., upon the pleadings, an agreed statement of facts and a view, it being agreed that " all proper inferences of fact may be drawn from the facts agreed upon and from those disclosed by a view."

From the plan, the pleadings and agreed facts, it appeared that Mary P. Ropes died on September 29, 1903, and that Eliza O. Ropes died on April 10, 1907 ; that the sisters were tenants in common of the premises described in the provisions of their wills above quoted, each owning one undivided half ; that the value of the real estate devised by each sister to the Essex Institute was about $57,000, and that the value of the personal estate bequeathed was about $20,000 ; that the premises No. 318 Essex Street are situated on the principal street of Salem and in the centre of the city, the area being 34,310 square feet.

" Some of the furniture in the house upon the premises No. 318 Essex Street belongs to the class known as antique. One piece and possibly some others may have come from the Revolutionary period. This furniture is mainly solid mahogany, in excellent condition. A larger part of the furniture is more

modern, belonging to the period from 1840 to 1870, and some to a later period. This furniture is good of its class and of a kind which was suitable for and used by families of means and refinement occupying residences of the size and type of this one. The furniture is in good condition. The mahogany cabinets with glass doors referred to in the amendment to the petitions contain a collection of Canton ware and Nanking ware, consisting of four hundred and ninety-nine pieces, in excellent condition, and good specimens. The cut glass is not of a kind unusual in households of the size and condition of this.

"Neither testatrix was devoted to botanical pursuits or studies."

The single justice, after taking a view, in addition to the facts agreed upon, found the following facts:

"The grounds are so situated and of such character as to be adapted for use as a small public park or open space and so used would be of substantial benefit to the public. These grounds constitute the 'garden attached to the house,' referred to in the wills, and can be used for the cultivation of such flowers, plants, shrubs, trees, etc., as may be useful in the study of botany, as prescribed by the wills, though the area is not sufficient to permit such cultivation on a large scale.

"The house is a good example of the architecture of the 'Revolutionary period,' except that it has to some extent been remodelled. It now retains, however, the general appearance and many of the characteristics of a house of that period. One or more of the easterly rooms upon the lower floor of the house, though furnished for purposes of a dwelling house, could be used for lectures to small classes.

"A considerable part of the furniture in the house is of the class known as antique. Among the pieces are high-boys, low-boys, high post bedsteads, a hall clock, tables and chairs. Many of these pieces would be suitable and proper for preservation in a museum of antique furniture. Though there is considerable furniture which is more modern, the general appearance of the house is of a house furnished in the old fashioned manner. The collection of Canton ware and Nanking ware is quite large and is suitable for preservation in a museum and would be interesting to those engaged in the study of such matters and would

perhaps excite some interest in those who were not. The house and its contents, as it now stands, would have an educational interest and value as a kind of museum."

With the consent of the parties the single justice reported the cases to the full court for determination.

*C. W. Richardson*, for the plaintiffs.

*L. D. Brandeis*, for the Urbana New Church University.

*F. T. Field*, Assistant Attorney General, for the Commonwealth.

MORTON, J. The principal question in these cases is whether the gifts constitute a public charity. The Essex Institute, which was named as trustee, has declined to accept the trust. But there is nothing to show that the continuance of the trust, if there is one, was in any way dependent on the acceptance of it by the Essex Institute. And it is well settled that in such a case a charity will not be allowed to fail for want of a trustee to administer it. *Fellows* v. *Miner*, 119 Mass. 541. *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280, 290.

There is another preliminary question. So far as these cases are concerned, each will disposes of what was almost wholly an undivided half interest in property held by the two as tenants in common. There is no reference in either will to the other and there is no provision in either will for acquiring the remaining half interest, or any part thereof. But we think that there can be no doubt, if that is material, that a joint scheme was contemplated by the signers of the two wills. Each provided for the appointment of the same trustee, and each, with a few trifling verbal differences, made the same disposition of this portion of her estate. What the result would have been if the joint purpose had failed as to one half of the property by reason of the incapacity of one of them to make a will, for instance, or from some other cause, we need not now consider. As the cases stand, if the gifts constitute a public charity we do not see any such impossibility of performance as to defeat it. The fact that one half of the property is or may be in the hands of one trustee and the other half in the hands of another trustee does not, it seems to us, present insuperable difficulties of administration. The Probate Court can appoint one or more trustees and remove them and appoint others in their stead, as circumstances and a

due regard to the interests and objects of the trust may seem to require.

If the question were whether, as stated in their brief by counsel for the Urbana New Church University, " a bequest to the Essex Institute of an undivided half interest in a homestead to ' stand forever as a memorial to the family of Nathaniel Ropes,' is a valid gift to charitable uses," we should have a great deal of diffiulty in discovering anything in the gift which constituted a public charity.    But while the motive of the gift was no doubt the establishment of " a memorial to the family of Nathaniel Ropes," we cannot say that the manner in which the purpose was to be carried into effect did not impress upon the gift the character of a charitable use.    The mere fact that a charity is also intended as a private memorial does not impair its public character or legal validity.    *Jones* v. *Habersham*, 107 U. S. 174, 189.

The will (we speak of the two as one) provides that the house shall be kept open to visitors wishing to see the collection of household antiques, though the testatrix directs that no public meetings or crowded receptions shall be held in the house, and that visitors shall not be admitted in crowds.    But admission is free.    So far as these directions are concerned there is nothing in them inconsistent with a public charity.    It is also provided that the garden attached to the house shall be used for the cultivation of such flowers, plants, shrubs, trees, etc., as may be useful in the study of botany, and the grounds shall be kept open for the enjoyment of the public so far as practicable, and shall be freely used by all students of botany whether in public or private schools.    Provision is also made for the employment of an instructor in botany in order to encourage the study of botany in Salem, and that the lectures shall be free to all subject only to such conditions and rules as may be deemed necessary for the best interests of the classes.    There is likewise provision for a possible extension of the grounds by the purchase of adjoining property.    In addition to the above it is found that though the house has to some extent been remodelled, it is a good example of the architecture of the Revolutionary period; and it is further found that the house and its contents, as it stands now, " would have an educational interest and value as

a kind of museum"; and that "the grounds are so situated and of such character as to be adapted for use as a small public park or open space and so used would be of substantial benefit to the public."

It is well settled that gifts for public educational purposes constitute public charities (*Drury* v. *Natick*, 10 Allen, 169), and we do not see how it can be said that the gift in this case was not for educational and other purposes coming within the scope of what constitutes a public charity though the motive in making it was, as already observed, to establish a perpetual memorial to the Ropes family. Free classes for instruction in botany are provided for and a botanical garden is also provided for the free use of all students of botany whether in public schools or private classes. The gifts are none the less public and charitable because the benefits are in part to be enjoyed only by residents of Salem, if they are so limited, which we do not decide. *Bartlett, petitioner*, 163 Mass. 509. The house itself and its contents, it is found, have an educational value and interest as a kind of museum. There is no limit to the way in which instruction may be given or useful information may be imparted, and no rule can be laid down for all cases as to what shall or shall not be regarded as educational in the sense in which that word is used in connection with public charities. We cannot say that the maintenance of the house and its contents, as a kind of museum open to free public admission would not have such educational value as to constitute it a public charity, though if the case stood on that alone we should regard it as open to more question. In addition it is to be observed that the grounds are to be used as an open space or public park, and it is well settled that a gift for a public park constitutes a public charity. *Bartlett, petitioner, supra.*

The result is that we think that the decree of the Probate Court should be affirmed.

*So ordered.*