HEINLEIN ET AL., APPELLANTS, *v.* THE ELYRIA SAVINGS
& TRUST CO., EXR. AND TRUSTEE, APPELLANT; CITY OF
ELYRIA ET AL., APPELLEES. (Two cases.)

354

(Nos. 1090 and 1091—Decided February 9, 1945.)

Messrs. *Stevens & Stevens, Mr. Don W. Myers, Messrs. Baker, Hostetler & Patterson* and *Mr. Fred T. Saussy,* for appellants Gust Heinlein and others.

Mr. *R. H. Rice, Messrs. Resek & Cook, Mr. Anthony Nieding* and *Mr. Lewis M. Simes,* for appellant The Elyria Savings & Trust Company, executor and trustee, and appellee Anthony Nieding.

Mr. *Richard S. Horan,* city solicitor, and Mr. *R. F. Vandemark,* for appellee city of Elyria.

Mr. *R. E. Baird,* for appellee Berdie Heinlein.

Mr. *A. H. West,* for appellee Salvation Army, Inc.

Doyle, J. This is a suit in equity, in which this court, in an appeal for trial *de novo,* is petitioned for a construction of the will of William Wagner, deceased. The action is brought by three of the five first cousins of the testator, his next of kin. The remaining two, having declined to join as plaintiffs, were made defendants.

The plaintiffs pray that certain trusts sought to be created for the maintenance of a family cemetery

lot and for the creation and maintenance of two parks, be declared invalid, and that a resulting trust be declared in favor of the plaintiffs and other heirs at law. The Elyria Savings & Trust Company, executor and trustee under the will, in its answer asks that the controversial provisions of the will be declared charitable, and that, if the directions of the testator should be found impractical in relation to the charitable purpose, the doctrine of *cy pres* be applied for the preservation of the trust. The city of Elyria, upon leave of court, in an answer and cross-petition, prays the court to apply in its favor the doctrine of *cy pres* and to order the residuary estate to be given over to it for the care and maintenance of Cascade Park, an old and established park within the corporate limits.

The estate in question is appraised at approximately $185,000. The will directs a number of specific bequests and then continues with the controversial items 9 and 14, which dispose of the residue through The Elyria Savings & Trust Company, the named trustee.

Item 9 provides:

"I give, devise and bequeath my homestead known as 209 West Bridge street, Elyria, Ohio, together with the contents, furnishings and household furniture therein contained, and all other real estate, together with the residue of my estate remaining after the payment of all my just debts, funeral expenses, cost of monument as provided for in item 2 above, and the aforementioned bequests, also all costs of administration, to The Elyria Savings & Trust Company of Elyria, Ohio, trustee, for the uses and purposes hereinafter mentioned and subject to the following terms and conditions:

"My said trustee shall expend not less than six hundred dollars ($600.00) per year out of the net income of said trust estate for the upkeep and beautifying of our family lot in Ridgelawn Cemetery, Elyria, Ohio.

It is my wish that said lot be kept in excellent condition and that the graves therein be decorated with beautiful urns containing beautiful flowers, also fresh flowers and wreaths made with the everlasting flower of Florida called the statice flower.

"The net remaining after the payment of the foregoing shall be retained by my trustee in a fund to be known as the 'Wagner Brothers Park Fund.' My said trustee is hereby authorized and directed to expend not to exceed the sum of sixteen thousand dollars ($16,000.00) of said fund to convert the site of my homestead in a public park to be known as 'Wagner Brothers Park.' My said trustee is further authorized, empowered and directed to sell or dispose of any buildings on said premises and to beautify said premises with suitable plantings of beautiful flowers and shrubs, good watering system, together with the necessary walks or paths. To install and erect a very beautiful electric illuminated fountain of the very best and latest type, one which will throw water to a good height. There is to be no seats or benches, no drinking fountain and no rest rooms. I want the park to be a beauty spot in the superlative degree, through which the public may walk and enjoy its superb beauty. I desire constructed a stone wall seven (7) feet high by eighteen (18) inches thick along the entire east side of said park and also along the entire north side of said park, wall so constructed that it may be flower covered, I prefer the everlasting statice flower of Florida, I desire this as a beautiful background for the park, there is also to be erected an appropriate tablet or marker designating said park as 'Wagner Brothers Park.' I wish the maple tree now growing at the front porch of my home and the maple tree at the rear porch to remain in the park, remove all others. I desire new cement walks on the North street side and West Bridge street side extending out to the curb.

"My trustee is further authorized to employ an experienced caretaker for said park who will be capable of keeping the park beautiful in every respect, caretaker to be paid fifteen dollars ($15.00) per week, to be employed from early spring to late fall."

Item 14 is:

"In the event the earnings of my said trust fund known as Wagner Brothers Park Fund be more than adequate for the payments of all expenses; such as the upkeep of our family cemetery lot of six hundred dollars ($600.00) per year, cost of caretaker for Wagner Brothers Park, upkeep, repairs and improvements of said park, three hundred dollars ($300.00) per year to my trustee, ten dollars ($10.00) per month to Anthony Nieding, whatever such surplus shall be after all necessary expenses are paid, it is my will that said surplus shall be set aside in a fund to be known as Wagner Brothers Park Fund No. 2. When said fund shall amount to the sum of sixteen thousand dollars ($16,000.00), my trustee is hereby authorized and directed to construct and erect another Wagner Brothers Park, along the same lines as the original park, with the exception there is to be no stone wall background. Said park to be located on my lot on Cleveland street, Elyria, Ohio, my trustee is authorized to employ another experienced caretaker at fifteen dollars ($15.00) per week.

"All surplus earnings from the original Wagner Brothers Park Fund, hereafter; shall be set aside in a fund to be known as Wagner Brothers Reconstruction Park Fund, to be used for repairs, new improvements and modern equipment for the two said parks, in order to keep the two said parks in the most excellent and beautiful condition."

The solicitor of Elyria and the special counsel for the said city have propounded the following questions

for the court's consideration. The answers to them, we believe, determine the case. They are:

1. Did William Wagner create a charitable trust under his will?

2. If so, is the trust impracticable, impossible or inexpedient of fulfillment?

3. If a charitable trust was created, and the fulfillment of this is impracticable, impossible or inexpedient, does the *cy pres* doctrine apply?

4. What becomes of the cemetery trust?

The Common Pleas Court in its consideration of the issues, applied the doctrine of *cy pres* to the "park" bequests, and awarded the funds so received to be used "exclusively to develop and maintain in Cascade Park, in said city of Elyria, a definite area, conforming as nearly as practicable to the ideas of testator as expressed in his will, and to contain, among other things, shrubs and flowers, including the everlasting statice flower of Florida. This area shall be developed and maintained as a beauty spot in the superlative degree, through which the public may walk and enjoy its superb beauty. Said area shall at all times be kept plainly marked as follows: 'Wagner Brothers Park Fund Maintains This Section of Cascade Park.' "

This part of the court's judgment is noted only as a historical reference. We encounter the action *de novo* as an appeal on questions of law and fact under the Code of Civil Procedure, in which the entire order and judgment of the Court of Common Pleas is suspended. *Union Trust Co.* v. *Lessovitz,* 122 Ohio St., 406, 171 N. E., 849.

We approach our problem fully conscious that "The directive force of logic does not always exert itself * * * along a single and unobstructed path. One principle or precedent, pushed to the limit of its logic, may point to one conclusion; another principle or precedent, followed with like logic, may point with equal

certainty to another. In this conflict, we must choose between the two paths, selecting one or other, or perhaps striking upon a third, which will be the resultant of the two forces in combination, or will represent the mean between extremes.'' Cardozo, The Nature of the Judicial Process, page 40.

If the instrument in issue does not establish a charitable trust, the residue of the estate must pass to the heirs at law.

If the instrument expresses a charitable trust, and there is *no general charitable intent,* and it is impossible, impracticable or inexpedient, as opposed to inconvenient or undesirable, to carry out the trust, the estate must pass intestate.

If the instrument expresses a charitable trust *and a general charitable intent,* and it is, or becomes, impossible, impracticable or inexpedient to carry out its specific terms, then the doctrine of *cy pres* may be applied as the resultant of the opposing forces, on the principle that equity will make specific a *general charitable intent* of a settlor, and will, when a specific intent becomes impossible, impracticable or inexpedient of fulfillment, substitute another plan which is believed to approach the original scheme as closely as possible, on the theory that equity has the power to mould a charitable trust which expresses a general charitable intent, to meet emergencies.

If there is expressed a charitable trust, and the intent of the testator is narrow and exclusive and confined to a specific purpose, the direction of the testator should prevail, although the carrying out of the trust is inconvenient or even undesirable, but not impossible, impracticable or inexpedient. In such situation the doctrine of *cy pres* has no application.

I now deal with the above rules as provisional hypotheses, ever conscious of a former pronouncement of this court that ''A testator has the right to dispose

of his own property in such manner, not repugnant to law, as he sees fit, and his intentions ought to be carried out unless they contravene some positive rule of law, or are against public policy." *Moskowitz* v. *Federman*, 72 Ohio App., 149, at page 161, 51 N. E. (2d), 48.

■ Did William Wagner create a charitable trust under his will?

"A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." II Restatement of Law of Trusts, Section 348.

Of the text writers, Perry gives a comprehensive definition of a charitable trust in these words:

"Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick, and the afflicted; and all gifts for the public convenience, benefit, utility, or ornament, in whatever manner the donors desire to have them applied." II Perry on Trusts (7 Ed.), Section 687.

The will provides for the creation and maintenance of two small parks upon two designated plots of ground within the corporate limits of Elyria. While the word "park" may be criticized, in that it may be said to apply only to a larger area, nevertheless the word may also be used to apply to any small area which may be made adaptable for ornament and recreation, and provoke an appreciation of the beautiful in nature and art. Provision is made for the beautification of each plot in a "superlative degree, through which the public may walk and enjoy its superb beauty."

It is well settled in the law that a gift for the public use of land, which has beneficial utility to the pub-

lic in providing for the mental, moral, spiritual and physical improvement of the people, constitutes a public charity.

We determine that a charitable trust was created, and that the intention to create such trust can be ascertained from the will itself.

The fact that the testator desired to have his name associated with the charity and to perpetuate it therein, does not detract from the charitable character of the bequest. *Becker, Exr.,* v. *Fisher,* 112 Ohio St., 284, at page 296, 147 N. E., 744. The testator may have founded this trust solely to satisfy his family pride, for self-glorification, or he may have created it solely through altruism; but regardless of the reasons, a court of equity is not interested in the settlor's motive. We are interested only in the result of the trust upon the community and society in general.

■ Is the trust impracticable, impossible, or inexpedient?

The size of the available estate considered in relation to the specific provisions of the will, does not show that the execution of the trust is incapable of being performed by the means at hand. Nor would the execution of the trust contravene any rule of law or be against public policy. (As to minor details, discretion is vested in the trustees of a charitable trust to so execute such trust, as not to transgress the law, or to contravene established public policy.)

A charity may be said to be inexpedient if it does not tend to promote a charitable purpose, or does not tend to promote the end desired or does not promise success. Under these rules the trust in question seems to be unassailable. It does tend to promote a charitable purpose and the end desired, and can be successfully carried out. The fact that the members of this court may be of the opinion that the money could have been used to greater advantage in another way, is not a jus-

tification for deciding that the will of the man who was disposing of his own property should be frustrated and defeated. The worth of creations which have aesthetic value, and which tend to promote health and happiness, cannot be measured in dollars and cents.

The designated location for the first so-called beauty spot, is in an unattractive locality. It will face a row of small houses. It may be presumed that children and adults who live in the vicinity will be benefited by the proximity of those things which the testator sought to create. The more sordid a locality, the greater is the contrast of beauty. If the land involved covered many acres, probably no question would be raised as to the validity of the will's provisions. The size or location alone, cannot defeat the donor's wish. Such spots as the testator seeks to create are found in many of the cities in this country and in Europe, and, wherever they are found, they give to the local inhabitants, or the passersby, full return for the charity of the donor.

Concluding as we do that the provisions of the will, insofar as they relate to the creation of parks, should not fail, it is unnecessary to discuss why the doctrine of *cy pres* does not apply.

Suffice it to say, however, that the record before us does not show that the testator, in the giving away of his property, had a general charitable or benevolent intent. A reading of the will exhibits a clear and unqualified expressed intention to restrict his gift, and the use of particular property for a particular, specified purpose. It was no part of his plan, in the event of the failure of the charity, which he so meticulously arranged, that that part of his estate should be used in any other manner. The purpose and intent of the testator, we believe, is not left to inference or doubt. His choice of location and improvement was a vital one, and he had no secondary or broader plan.

"* * * There can be no question of *cy pres* until it is clearly established that the directions of the testator cannot be carried into effect. Therefore, a court of equity is not entitled to substitute a different scheme for the scheme which the donor has prescribed in the instrument which creates the charity, merely because a coldly wise intelligence, impervious to the special predilections which inspired his liberality, and untrammeled by his directions, would have dictated a different use of his money. * * *" 10 American Jurisprudence, Charities, Section 124. Compare, 63 A. L. R., annotation, at page 885.

■ What becomes of the cemetery trust?

Under the common law a trust which provided for the permanent upkeep of the settlor's grave or his family lot was held to be, in most instances, not charitable and was therefore not valid, because it violated the rule against perpetuities. In Ohio and in many other states of the Union the respective legislatures have permitted the creation of such trusts. Professor Bogert states:

"Evidently the feeling has been that respect for the dead is a sentiment desirable of cultivation in a civilized community, that the living will lead better lives if their ancestors, other relatives, and their friends are decently buried, their resting places marked, and their memories kept green by care and ornamentation of the graves and monuments." 2 Bogert, Trusts and Trustees, Section 377.

There is a distinct benefit to the public at large in the maintaining and care of a cemetery lot. It adds tone and color to the entire cemetery and provides an incentive to other lot owners to assist in making the burial ground a beauty place for all to see.

Section 10110, General Code, provides:

"Every cemetery company or association may take, hold, possess, use, enjoy, and occupy such property of

any kind as legally is given, granted, or devised to it, for the purpose of building, repairing, maintaining, adorning and beautifying fences, graves, vaults, mausoleums, monuments, walks, cemetery lots, drives, or avenues in its cemeteries, or for the purpose of building, repairing, maintaining, cleaning, adorning and beautifying therein any particular fence, cemetery lot, grave, vault, mausoleum, monument, walk, drive or avenue, and appropriate such property, or the proceeds thereof, to any of the foregoing purposes according to the terms of the trust for which it was given, granted or devised.''

If the terms of the instrument under consideration had designated the city of Elyria, or its proper officials, as trustee, to carry out its cemetery provisions, it would seem that the statute (Section 10512-8, General Code) would make such provisions not violative of the rule against perpetuities. The city of Elyria is the proprietor of and is obligated to maintain the burial lots in the designated cemetery, and the cemetery regulations authorize the receipt of a reasonable sum for the perpetual care of graves. Does the designation of a wrong trustee render the provision invalid?

It is a doctrine of universal recognition that a trust, or any of its separate provisions, will not be permitted to fail for want of a trustee. When there has been no trustee appointed, the court under its general equitable powers will appoint one. When there is a failure of suitable or legal trustees, either from original or supervenient incapacity to act, there is the same power vested in the court.

Compare, *Gearhart* v. *Richardson,* 109 Ohio St., 418, 142 N. E., 890.

This court determines that this part of the trust shall not fail because of the failure to designate a proper trustee under the statute. And, in the exercise of general equitable powers, the executor will be

directed to transfer the sum of $5,000 to the proper statutory person (the city of Elyria, director of public service), the income of which shall be used to carry out the wishes of the testator.

The will specifically designates that not less than $600 shall be expended annually for this purpose. The direction to transfer $5,000, which we determine a reasonable sum (at 2½% interest it will produce $125 annually), may seem inconsistent with the provisions of the will. In explanation thereof, we determine that if a gift should be excessive for the ornamentation of a grave or lot, it may be reduced by the court (1) on the ground of public policy, and (2) to conform to the spirit of the rules and regulations of the statutory trustee.

Summarizing a part of the preceding discussion, we are of the opinion that in this state it is unnecessary to examine and weigh the conflicting authorities, as to whether a bequest for the perpetual care of a family cemetery lot is a charitable bequest. This state by statute has repudiated the rule of the common law and placed such bequests in the charitable class, and allowed such trusts to be perpetual. And this conclusion is especially true when applied to a public cemetery, as is the case herein.

It is apparent that the amount of money necessary to carry out the specific bequest of the testator of "not less than $600 per year" for expenditure on the cemetery lot, will not be needed for this purpose. ($600 a year capitalized at 2½% interest amounts to $24,-000.)

Should the surplus pass to the heirs at law, or should it be applied to the second object in the residuum?

"Where the owner of property gratuitously transfers it upon trust for a charitable purpose which is fully performed without exhausting the trust estate,

the trustee holds the surplus upon a resulting trust for the transferor or his estate, unless

"(a) the doctrine of *cy pres* is applicable, or

"(b) the transferor properly manifested an intention that no resulting trust of the surplus should arise.

"Comment: * * *

"b. Rebutting the resulting trust. If the settlor properly manifested an intention that if there should be a surplus remaining after the performance of the charitable trust the trustee should hold the surplus upon another charitable trust * * *, no resulting trust of the surplus arises, but the trustee holds the surplus upon the other charitable * * * trust." II Restatement of Law of Trusts, Section 432.

The 16 items of the will, whether read individually or collectively, negate any general charitable intent on the part of the testator. He made specific bequests to his relatives and friends; he remembered and gave conditionally to a church and the Salvation Army, he having provided that, if his death should occur "within one year of the signing of this will," the Salvation Army and the church bequests should "become a part of my residuary estate and be disposed of as such"; he then with extraordinary detail created out of the residuum, which constituted the vast bulk of the estate, the cemetery and park trusts; he then provided with exacting care that any surplus funds should be set aside in a "Wagner Brothers Reconstruction Park Fund, to be used for repairs, new improvements and modern equipment for the two said parks, in order to keep the two said parks in the most excellent and beautiful condition" (Item 14 of the will, *supra*).

A reading of the will leaves no doubt of the intention of the testator. He intended that none of his relatives should receive anything other than the amounts specifically bequeathed to them, and that they should

be entirely shorn of their bequests if they should attempt to defeat the provisions of his will. This intention is revealed in item 15, which is:

"All the foregoing legacies are given upon the express condition that no legatee shall directly or indirectly commence, prosecute or aid in the prosecution of any legal proceedings having for its object the defeat in whole or in part of any provisions of this will or of any testamentary intention herein declared, and I hereby revoke and annul all gifts made to any legatee who may directly or indirectly commence, prosecute or aid in the prosecution of such proceedings, and direct that all gifts to such legatee or legatees become a part of my residuary estate and be disposed of as such."

Our conclusion on this aspect of the case is that the surplus remaining in the specific charitable bequest for the maintenance of the cemetery lot, should be devoted to the carrying out of his next subsequent charitable bequest, because the testator has shown so conclusively that he intended to devote the whole residuary income from his property to specific charitable purposes.

If the revenues or corpus of a charity are more than sufficient for the specified objects of a charity, the surplus will not go to the heirs at law, but will be applied to charitable purposes affixed to a subsequent bequest for which the remainder of the residuum is specifically bequeathed.

The court in the consideration of this case has examined many authorities, some of which, in addition to those already cited, are as follows: *Landis et al., Exrs.,* v. *Wooden,* 1 Ohio St., 160, 59 Am. Dec., 615; *Gerke* v. *Purcell,* 25 Ohio St., 229; *Allen, Admr.,* v. *City of Bellefontaine,* 47 Ohio App., 359, 191 N. E., 896; *Rhode Island Hospital Trust Co.* v. *Williams,* 50 R. I., 385, 148 A., 189, 74 A. L. R., 664; *Richardson* v.

368

*Essex Institute,* 208 Mass., 311, 94 N. E., 262, 21 Ann. Cas., 1158; *In re Bartlett,* 163 Mass., 509, 40 N. E., 899; *Noel* v. *Olds,* 138 F. (2d), 581; *Jones* v. *Habersham et al., Exrs.,* 107 U. S., 174, 27 ·L. Ed., 401, 2 S. Ct., 336; *Noice* v. *Schnell,* 101 N. J. Eq., 252, 137 A., 582, 52 A. L. R., 965; 14 Corpus Juris Secundum, Charities, Section 6; 2 Restatement of Law of Trusts, Section 368 *et seq.*; 2 Bogert on Trusts and Trustees, Chapters 19 and 22; 3 Scott on Trusts, Chapter 11; 10 American Jurisprudence, Charities, Section 4 *et seq.*; 139 A. L. R., annotation III on page 878.

*Decree accordingly.*

STEVENS, P. J., and Ross, J., concur.

Ross, J., of the First Appellate District, sitting by designation in the Ninth Appellate District.