In re TRUST OF LOWRY; The State of Ohio ex rel. Dann, Atty. Gen., Appellant.

[Cite as *In re Trust of Lowry,* 175 Ohio App.3d 107, 2008-Ohio-517.]

Court of Appeals of Ohio,
Third District, Henry County.

No. 7–07–07.

Decided Feb. 11, 2008.

Jeffrey R. Lankenau, for appellee.

Daniel W. Fausey, Assistant Attorney General, for appellant.

SHAW, Presiding Judge.

{¶ 1} Appellant, the State of Ohio ex rel. Marc Dann, Attorney General of Ohio ("the state") appeals the July 27, 2007 judgment of the probate court of Henry County, Ohio, partially terminating the trust of Earl Lowry ("the trust").

{¶ 2} This matter began with a trust created by Earl Lowry, upon his death, in his last will and testament. The trust was created expressly for the purpose of beautification and upkeep of three cemeteries located in Damascus Township, Henry County. Prior to this action, the trust has been in force for over 35 years.

{¶ 3} On February 8, 2007, the trustees, who are also the township trustees, filed an application to terminate or modify the trust "upon consent of the beneficiary for the reason that the continuance of the trust is not necessary to achieve any material purpose of the trust," or in the alternative, for "an order modifying said trust to cap the amount that may accumulate in the trust upon the

consent of the beneficiary for the reason that modification is not inconsistent without a material purpose of the trust."

{¶ 4} On April 23, 2007, the trustees filed a motion to withdraw the application to terminate or modify the trust, asking the court for an order dismissing their original motion. On April 23, 2007, the court dismissed the prior application of February 8, 2007.

{¶ 5} Also on April 23, 2007, the trustees filed an application to terminate or modify the trust so that the trust could be modified to "distribute a portion of the funds accumulated in the Trust by the consent of the beneficiary for the reason that the Trust property is more than sufficient to satisfy the Trust's current purposes and maintaining all the funds in the Trust has become impracticable."

{¶ 6} A hearing was held on July 3, 2007, with the parties stipulating to the following facts as articulated in the July 24, 2007 judgment of the court:

1. The trust balance as of September 30, 2005 was $74,521.11.

2. The entire trust balance is invested in a bank certificate of deposit drawing five percent interest per annum.

3. The trust expenses over the first thirty-five years of the trust's existence totaled $19,058.00 for the beautification and upkeep of the three Damascus Township Cemeteries. Said sum does not include real estate taxes, fiduciary bond premiums, attorney fees and court costs.

4. The Trustees of the Trust of Earl Lowry, deceased, believe that Twenty-five Thousand Dollars ($25,000.00) would be more than sufficient to satisfy the Trust's stated purpose.

{¶ 7} Based on these stipulations, the court made the following findings:

1. The charitable purpose of the Trust of Earl Lowry, deceased has become impracticable to the extent that income from the Trust property exceeds the funds necessary to satisfy the Trust's stated purpose.

2. Twenty-five Thousand Dollars ($25,000.00) is more than sufficient to satisfy the current purpose of the Trust.

3. Pursuant to Section 5804.13 R.C. the Court determines to apply cy pres to terminate a portion of the Trust by directing that the property be applied or distributed, in part, in a manner consistent with the settlor's general charitable purpose.

{¶ 8} The court entered its judgment and ordered the following:

1. The Court orders a partial termination of the Trust for funds in the Trust in excess of Twenty-five Thousand Dollars ($25,000.00).

2. The Trust funds in excess of the Twenty-five Thousand Dollars ($25,000.00) shall be used for other charitable purposes of Damascus Township, Henry

County, Ohio expended by the Trustees in the manner consistent with a general charitable purpose.

3. The Trustees shall first consider capital improvements for the three cemeteries in Damascus Township, Henry County, Ohio and shall hold at least one public hearing advertised at least once in the Northwest Signal with thirty (30) days prior notice to the hearing. At the hearing, the Trustees shall hear and receive any suggestions from Damascus Township residents as to capital improvements to the three cemeteries in Damascus Township, Henry County, Ohio.

4. Thereafter, at their sole and exclusive discretion, the Trustees may expend the funds in excess of Twenty-five Thousand Dollars ($25,000.00) for capital improvements to the cemeteries as determined by a resolution of a majority of the Trustees and, thereafter, may expend said funds for other capital improvements in Damascus Township, Henry County, Ohio. "Capital Improvements" as used herein shall be defined as real estate or equipment with a useful life estimated at ten years or more.

{¶ 9} The state now appeals, asserting three assignments of error.

### Assignment of Error I

The probate court improperly ordered the partial termination of the trust under *cy pres.*

### Assignment of Error II

The probate court misapplied *cy pres* because capital improvements to Damascus Township are too dissimilar a purpose to Earl Lowry's charitable purpose.

### Assignment of Error III

The probate court misapplied the term "general charitable intent" as used at common law and in R.C. 5804.13.

{¶ 10} Initially, we note that the appellate rules state: "[I]f an appellee fails to file [his] brief within the time provided by [these] rule[s], or within the time as extended, [he] will not be heard at oral argument * * * and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C); *State v. Young*, 3rd Dist. No. 13–03–52, 2004-Ohio-540, 2004 WL 231506. In the instant case, the trustees, the appellees, failed to submit a brief to this court. Accordingly, we elect to accept the statement of facts and issues of the state, the appellant, as correct pursuant to App.R. 18(C).

■ {¶ 11} The state's assignments of error are interrelated and, for ease of discussion, will be addressed together. The state argues that partial termination was inappropriate under cy pres because the capital improvements allowed by the termination are too dissimilar to Lowry's original charitable purpose and because the court misapplied the phrase "general charitable intent."

> The rule of construction by which charitable gifts are preserved for the public benefit is known as the Cy Pres doctrine. In the law of trusts it refers to a rule of construction used by courts of equity to effectuate the intention of a charitable donor "as near as may be" when it has become impossible or impractical by reason of changing conditions or circumstances to give literal effect to the donor's intention.

*Cheney v. State Council of Ohio Junior Order United Am. Mechanics* (1959), 11 O.O.2d 112, 162 N.E.2d 242, 244; see also *Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.* (1997), 79 Ohio St.3d 98, 679 N.E.2d 1084.

{¶ 12} At common law, Ohio courts have followed the traditional view that before the cy pres doctrine will be applied by a court, the following three essentials must be present:

> (1) there must be a valid charitable trust and one that is invalid will not be cured by an application of the doctrine;

> (2) it must be established that it is impossible or impractical to carry out the specific purposes of the trust;

> (3) it must be established that the donor evinced a general charitable intent.

*Cheney* at 244.

{¶ 13} The common-law doctrine of cy pres has recently been codified at R.C. 5804.13, which provides:

> (A) Except as otherwise provided in division (B) of this section, if a particular charitable purpose becomes unlawful, impracticable, or impossible to achieve, all of the following apply:

> (1) The trust does not fail in whole or in part.

> (2) The trust property does not revert to the settlor or the settlor's successors in interest.

> (3) The court may apply cy pres to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes. In accordance with section 109.25 of the Revised Code, the attorney general is a necessary party to a judicial proceeding brought under this section.

> (B) A provision in the terms of a charitable trust for the distribution of the trust property to a noncharitable beneficiary prevails over the power of the

court under division (A) of this section to apply cy pres to modify or terminate the trust.

{¶ 14} The official comment to R.C. 5804.13 indicates that this codification "modifies the doctrine of cy pres by presuming that the settler had a general charitable intent when a particular charitable purpose becomes impossible or impracticable to achieve."

{¶ 15} At the outset, we question whether the administration of the trust has become impossible or impracticable, as found by the probate court. The judgment of the probate court states that the trust has become "impracticable to the extent that income from the Trust property exceeds the funds necessary to satisfy the Trust's stated purpose."

{¶ 16} Impracticability occurs when:

even though it is possible to carry out the particular purpose of the settlor, if to do so would not accomplish the settlor's charitable objective, or would not do so in a reasonable way. In such a case, it is "impracticable" to carry out the particular purpose in the sense in which that word is used in this Section.

Restatement of the Law 3d, Trusts (2003), 515, Section 67.

{¶ 17} Moreover, we are mindful that "the direction of the testator should prevail, although the carrying out of the trust is inconvenient or even undesirable." *Heinlein v. Elyria Sav. & Trust Co.* (1945), 75 Ohio App. 353, 359, 31 O.O. 123, 62 N.E.2d 284.

{¶ 18} We are not convinced that this notion of impracticability is present in this case. For over 35 years, the trust has carried out Lowry's original purpose, accomplishing his objective through reasonable means of upkeep and beautification of the cemeteries. Moreover, the trust provides a resource of funds should the mausoleum be condemned or abandoned, necessitating the removal of the remains of Lowry and others.

{¶ 19} However, even if impracticability were to be established or conceded in this case, R.C. 5804.13 still requires that if a trust is modified or terminated, it must be "in a manner consistent with the settlor's charitable purposes." Lowry's charitable intent is specifically expressed in his last will and testament. Lowry provided in Item 28 of his last will and testament for the creation of a trust for the following purpose:

The employment of a recognized Horticulturist or Landscaping Firm or individual to oversee and direct the beautification by planting, trimming and cultivation of trees, shrubbery and flowers and landscaping the same in the three (3) Cemeteries now in Damascus Township, Henry county, Ohio, and also to be used for the upkeep, care and maintenance and beautification of the Mausoleum in the United Brethren Cemetery, the income shall be used for all

three (3) cemeteries and for the Mausoleum, and not to be expended on any one particular Cemetery or Mausoleum, to the detriment of any one of the Cemeteries.

In the event, that the mausoleum be condemned or abandoned, I direct said Trustees to expend said income for the purchase of suitable burial lot or lots in Hockman Cemetery and to transfer the remains of Calvin S. Lowry, Addie Lowry, Clyde Wilcox, Alma Wilcox, and Marguerite Wilcox to said Hockman Cemetery, and to purchase and cause to be erected monuments and grave markers for the above named.

{¶ 20} On reading Item 28, it is clear that Lowry intended to provide for upkeep and beautification of three cemeteries and for the indefinite care of his remains and the remains of other specified individuals. Although R.C. 5804.13 may now permit the court to presume a general charitable intent, we have a serious question as to whether general capital expenditures on behalf of local government for "real estate or equipment" purchases constitute a "charitable purpose" under the statute as a matter of law.

{¶ 21} More important, however, even if R.C. 5804.13 allows for modification based upon a general charitable intent, the purpose of the court-ordered modification must still be consistent with the settlor's specific charitable intent. There is nothing in the language of Lowry's last will and testament providing for the beautification and upkeep of three cemeteries as well as a family mausoleum that evinces any intent to provide for other capital improvements to Damascus Township. As a result, in this instance, it is our conclusion that the modification of the trust ordered by the probate court allows for the use of the trust for a purpose too dissimilar to Lowry's original intent.

{¶ 22} Finally, one might argue that the trust could still be modified if waste was occurring. When excess resources remain in a trust, waste can be a justification for modification of a trust. Waste occurs when "the amount of property held in the trust exceeds what is needed for the particular charitable purpose to such an extent that the continued expenditure of all of the funds for that purpose, although possible to do, would be wasteful." Restatement of the Law 3d, Trusts (2003), 515, Section 67.

Faced with circumstances of the type required for cy pres intervention in a surplus-funds case, a court might broaden the purposes of the trust, direct application of the surplus funds to a like purpose in a different community, or otherwise direct the use of funds not reasonably needed for the original purpose to a different but reasonably similar charitable purpose.

Id.

{¶ 23} The trust at issue contained $74,521.11 as of September 30, 2005. Although the record indicates that over 35 years of trust administration, only

$19,058 have been expended for the beautification and upkeep of the three Damascus Township cemeteries, we cannot say with certainty that this spending pattern would continue. For example, Damascus Township could allocate less of its own funding to the cemeteries in the future, requiring additional funds from the trust to maintain the cemeteries in their current condition.

{¶ 24} Moreover, this court is mindful of the provision in the last will and testament that provides as follows:

> In the event, that the mausoleum be condemned or abandoned, I direct said Trustees to expend said income for the purchase of suitable burial lot or lots in Hockman Cemetery and to transfer the remains of Calvin S. Lowry, Addie Lowry, Clyde Wilcox, Alma Wilcox, and Marguerite Wilcox to said Hockman Cemetery, and to purchase and cause to be erected monuments and grave markers for the above named.

If it were necessary to carry out the above provision, this could cause a significant increase in the expenditures from the trust. As a result, there is nothing in the record to support a finding of waste here, and we note that the probate court did not appear to make waste a basis of its ruling in any event. Accordingly, it is our conclusion that the funds contained in Lowry's trust are not so excessive, in this case, as to constitute waste.

{¶ 25} In sum, we do not find sufficient evidence in the record to establish that the trust has become impracticable or has become wasteful. Moreover, it is our conclusion that even if modification were appropriate, the current modification is too dissimilar to Lowry's original charitable purpose. Based on the foregoing, all of the state's assignments of error are sustained.

{¶ 26} Accordingly, the July 27, 2007 judgment of the probate court of Henry County, Ohio, partially terminating the trust of Earl Lowry is reversed.

Judgment reversed.

WILLAMOWSKI, J., concurs.

ROGERS, J., concurs separately.

ROGERS, J., concurring separately.

{¶ 27} I concur with the result reached in the majority's opinion. However, I write separately to further note that there is no evidence that the trustees have ever fully complied with the directives of the trust. The trust provides for "the employment of a recognized Horticulturist or Landscaping Firm or individual to oversee and direct the beautification by planting, trimming and cultivation of trees, shrubbery and flowers and landscaping * * * and also the upkeep, care and maintenance and beautification of the mausoleum * * *." See Item 28 of the

will. The expenditure of less than $20,000 over a period of 35 years suggests that the trustees have not recognized the requirement that persons or firms be employed for landscaping and planting. The evidence suggests that any action by the trustees has been limited to maintenance. I would find the lack of evidence of the hiring of a landscaper or horticulturist sufficient cause, in and of itself, to reverse the decision of the trial court.