REVOCABLE TRUST OF RICE, Appellee,

v.

The STATE ex rel. ATTORNEY GENERAL, Appellant.

[Cite as *Revocable Trust of Rice v. State ex rel. Atty. Gen.*, 182 Ohio App.3d 605, 2009-Ohio-1774.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23082.

Decided April 10, 2009.

Kiger & Kiger, James A. Kiger, and David V. Kiger, for appellee Ralph Dennler, Trustee.

Richard Cordray, Attorney General, and Jason Patrick Small, Megan K. Fowler, and Michael D. Allen, Assistant Attorneys General, for appellant.

Junk & Junk and William T. Junk, for appellee Fayette County Charitable Foundation.

WOLFF, Judge.

{¶ 1} The state of Ohio appeals from the trial court's declaratory judgment allowing the appellee, trustee Ralph Dennler, to expand the scope of charitable bequests under the Jean Barger Rice trust.

{¶ 2} The state advances six assignments of error on appeal. First, it contends that the trial court improperly ordered reformation of the trust. Second, it claims that the trial court improperly found that growth of trust assets constituted "waste" and frustrated the purpose of the trust. Third, it asserts that the trial court erred by finding that supporting the settlor's specific charitable purpose would not fulfill a present need in the community. Fourth, it argues that the trial court reformed the trust in a manner inconsistent with the settlor's express charitable purpose. Fifth, it maintains that the trial court erred by misapplying the settlor's general charitable intent. Sixth, it contends that the trial court improperly found trust assets to be "undesignated" and transferable at the trustee's discretion.

{¶ 3} The record reflects that Jean Barger Rice established a revocable trust in April 2003 and named Ralph Dennler as trustee. At that time, the trust consisted of real estate valued at approximately $1.12 million and investments valued at approximately $1.75 million. The primary real estate holding was Rice's 421–acre farm, which was valued at nearly $1 million. The total value of Rice's trust assets in April 2003 was approximately $3 million. She amended the trust with a May 2005 addendum, modifying certain bequests and making other changes. She died in September 2007. Dennler filed an inventory valuing her trust assets at more than $5.5 million on the date of death. At that time, Rice's 421–acre farm in Fayette County accounted for nearly $1.5 million of the value.

The other approximately $4 million consisted primarily of stocks, bonds, cash, and other real estate holdings.

{¶ 4} Rice's trust provided a number of one-time bequests for individuals and organizations. Two enduring components of Rice's trust, referred to by the parties as the "small trusts," largely benefited charitable organizations that care for abused and neglected animals. In particular, Article III, Section 3.01, paragraph (c)(4)(j), as amended, provided:

{¶ 5} "I direct my Trustee or his duly qualified successor [to] retain and invest the sum of $300,000.00 either in monies, stocks, bonds and securities or other trust assets, excepting my farm in Fayette County, Ohio, and from the income pay the same in three equal shares quarterly as follows:

{¶ 6} "i. One Share to Rita Dodds if she be living; otherwise this bequest shall fail.

{¶ 7} "ii. One-half share to Linda Morrow if she be living, otherwise this bequest shall fail.

{¶ 8} "iii. One share to the International Fund for Animal Welfare (I.F.A.W.) for as long as it may exist. One-half share to the Society to improve conditions for stray animals."

{¶ 9} The other pertinent provision, Article III, Section 3.01, paragraph (c)(4)(m), as amended, provided:

{¶ 10} "I own and possess in fee simple absolute approximately 421.62 acres of farmland situated in Green Township, Fayette County, Ohio. I direct my Trustee to farm the said lands and maintain such in the same manner that I have done throughout my lifetime. I have a tenant farmer who has resided on the land for many years. I direct my Trustee to retain that tenant farmer and to enter into a contract with him for the tillage of the land, either by cash rent or on a 50/50 share cropper basis. My tenant farmer shall have the right to reside on the premises and to use all buildings and improvements thereon such as he has commonly done in the past years.

{¶ 11} "From the income generated from the farm, I direct my Trustee to pay the same over annually to The Fayette County Charitable Foundation. From such income paid to the Fayette County Charitable Foundation generated from my farm, I direct that such income be paid to recognized charitable organizations for use in the community that will provide for abused and neglected animals and veterinarian services for indigent families in Fayette County."

{¶ 12} In Article III, Section 3.01, paragraph (c)(4)(n), as amended, Rice's trust accounted for the possibility of surplus income beyond what was needed to fund the charities mentioned above. Paragraph (c)(4)(n) provided:

{¶ 13} "After distribution of the income from my farm to the Fayette County Charitable Foundation, any remaining undistributed income may be retained by my Trustee and reinvested to enhance and grow the trust assets. I repose confidence in my Trustee to invest, retain or distribute such non-specified income."

{¶ 14} Introductory language in Article VI, Section 6.01 granted trustee Dennler "the power to do any and every act and thing * * * with respect to property included in the trust created hereunder which [he] could do if [he] were the absolute owner thereof, limited in [his] discretion and judgment only to that of a prudent man exercising reasonable care." Finally, Article VI, Section 6.01, paragraph (*l*) granted Dennler discretionary power, which was to be broadly construed, to do any acts "necessary or appropriate," in his judgment, "for the proper or advantageous management, investment or disposition of any [trust] property."

{¶ 15} Dennler filed the present action in March 2008, seeking a declaratory judgment regarding his ability to distribute surplus trust income to additional charities. Dennler alleged that the trust's value had grown substantially since its creation and that it generated income beyond what was needed to fund Rice's specific charitable bequests. He requested permission to distribute income to the Dayton Theater Guild, the Fayette County Fair board, and other charities of his choosing.

{¶ 16} In June 2008, the state moved for partial judgment on the pleadings. The trial court sustained the motion, in part, holding that Dennler could not distribute surplus funds to the Dayton Theater Guild or other performing-arts charities. The trial court overruled the motion with regard to his request to fund the Fayette County Fair board and other charities. Thereafter, the trial court held a September 2, 2008 pretrial conference. There is no record of what took place during the conference. The trial court next filed an October 16, 2008 decision and final judgment entry. Therein, the trial court stated:

{¶ 17} "During the [September 2, 2008] pretrial the parties discussed the remaining issues before the Court, together with a proposal for the Court's consideration which would balance the necessity for the reformation of the trust and the interest of preserving the intent of the testator as expressed therein.

{¶ 18} "Upon consideration of the proposal, the Court finds as follows:

{¶ 19} "1. That Jean Barger Rice (The Settlor) died with substantial trust income that was 'undesignated' except for limited language which vested Mr. Dennler, the trustee, with the power to invest and dispose of trust assets in his discretion.

{¶ 20} "2. That at the time the Settlor made her estate plan she was vested with approximately 1.2 million dollars in liquid assets in addition to her farmlands.

{¶ 21} "3. That through prudent investments and favorable market conditions, Mr. Dennler as Mrs. Rice's power of attorney grew her portfolio by over four million dollars.

{¶ 22} "4. That Fayette County, Ohio is an agrarian based county with a population of approximately 28,000 persons and that further the fiscal need for indigent veterinarian series [sic] and care for abused animals are present but do not demonstrate a need for the entire net income of the undesignated trust assets.

{¶ 23} "5. That as a result of this growth the stated purposes of the trust have been frustrated in that the named trust charities would be over funded as beneficiaries of both the designated funds from Settlor's farm and the undesignated funds which total approximately $350,000 per year.

{¶ 24} "6. That the Settlor's general purpose of the trust was to promote the care of animals, her background being in farming and agriculture.

{¶ 25} "7. The Court further finds that the information provided to the Court by the informal stipulation of the parties demonstrates that the application of the trustee for the funding of a bequest to the Fayette County Agricultural Society is in the 'Spirit' of the trust and should be authorized.

{¶ 26} "8. That the terms of the trust should be reformed to prevent waste, excessive taxation and frustration of its purpose.

{¶ 27} "IT IS, THEREFORE, ORDERED BY THE COURT that any bequests from the trustee to the Fayette County Agricultural Society is hereby approved and further that similar bequests by the trustee to promote a substantial purpose of the trust shall be approved provided the bequest is given for the care of animals, the promotion of agriculture and husbandry, agricultural related activities, activities promoted through the Ohio State University Extension Services for 4–H, including but not limited to Agriculturally related programs, for the preservation and humane treatment and preservation of wildlife, for veterinarian agricultural education scholarships and training of young people in the care and maintenance of animals, for veterinarian supplies and equipment, for animal adoption programs and services, and further to include donations to any charities designed for the funding of any or all of the above activities, and for any other purpose which will promote directly or indirectly the humane treatment of animals as determined by the trustee."

{¶ 28} Prior to receiving the trial court's final judgment entry, the state moved for a status conference on October 21, 2008. The trial court overruled the motion

on October 28, 2008, noting that nothing remained to be litigated. This timely appeal followed.

{¶ 29} The state's first three assignments of error are related. They all challenge the trial court's decision authorizing the trustee's use of "undesignated" trust income. In its first two assignments of error, the state contends that the doctrines of cy pres and deviation, which were cited in Dennler's complaint, do not apply. The state claims that these doctrines apply when compliance with a trust's terms is impossible, illegal, or impracticable, which is not the case here. The state also insists that overfunding a trust does not warrant application of either doctrine. Finally, the state maintains that Dennler provided no evidence to justify reformation. In particular, it contends that the trial court improperly "ordered reformation of the trust without evidence of either changed circumstances necessitating reformation, or the Settlor's intent to alter the Trust's purposes if such circumstances occurred."

{¶ 30} The state's last three assignments of error also are related. Assuming, arguendo, that some reformation was permissible here, the state argues that the reformation ordered by the trial court was not appropriate. It contends that the trial court ignored the principle that cy pres and deviation require any reformation of a charitable trust to be consistent with the settlor's specific charitable intent. The state also contends that the trial court misapplied Rice's general charitable intent and, in so doing, ignored her specific intent to provide care for abused and neglected animals. Finally, the state claims that the trial court misinterpreted the trust, resulting in a decision that "allows assets of a charitable trust impressed for one purpose to be transferred and expended for various purposes."

{¶ 31} We begin our analysis by noting an apparent misconception underlying each of the state's six assignments of error. Throughout its brief, the state contends that the trial court erroneously reformed what it calls the two "small trusts" by diverting income from them to other charitable organizations of Dennler's choosing. As set forth above, these small trusts consist of (1) an earmarked investment of $300,000, a portion of the income from which benefits IFAW and SICSA, and (2) the income generated by Rice's farm, which goes to the Fayette County Charitable Foundation for the care of abused and neglected animals and veterinarian services for indigent families. The state asserts that these small trusts were the only part of the larger Jean Barger Rice trust reformed by the trial court. A common theme permeating its brief is that the trial court erred in diverting money away from Rice's designated charities to unrelated ones selected by Dennler.[1] The state's six assignments of error may

---

1. See, e.g., Appellant's Brief at 8, fn.1 (asserting that the trial court's reformation "affects only the enduring components of the Trust that have the purpose of providing for care for abused

be distilled into two broad arguments. It asserts, first, that the trial court should have required Dennler to maintain and reinvest any surplus funds in the two small trusts. Alternatively, if reformation of the two small trusts was permissible, the state argues that the charitable purpose behind them must govern any modification. Because the small trusts largely provided for the care of abused and neglected animals, the state contends that the trial court should have restricted any modification of them by authorizing only additional distributions to like-minded charities.

{¶ 32} Having carefully reviewed the record, we conclude that the trial court's October 16, 2008 decision and judgment entry *did not* reform the charitable small trusts in any way. The Jean Barger Rice trust granted the charitable beneficiaries of the two small trusts only certain *designated* income. In particular, as noted above, it earmarked $300,000 and granted IFAW and SICSA a portion of the annual income generated by this investment. The trust also granted the Fayette County Charitable Foundation the annual income generated by the operation of Rice's $1.5 million farm. The Jean Barger Rice trust did not provide for these beneficiaries to receive anything more, regardless of how much annual income the entire trust generated. According to Dennler, the $5.5 million Jean Barger Rice trust, as a whole, now generates much more annual income than was designated specifically for the charities named in the two small trusts. In its ruling, therefore, the trial court correctly identified the issue before it as whether Dennler could distribute "certain *undesignated funds* (income) generated by the trust" to additional charities not named by Rice. (Emphasis added.)

{¶ 33} We see nothing in the trial court's decision that reforms the bequests of income specifically designated by Rice for IFAW, SICSA, and the Fayette County Charitable Foundation in the two small trusts. More specifically, the trial court did not purport to deprive IFAW or SICSA of the income generated by the $300,000 initial investment designated for their benefit. Nor did the trial court purport to deprive the Fayette County Charitable Foundation of the annual

and neglected animals"); Id. at 10 ("[T]he Probate Court reformed the small trusts to support 'agriculture and husbandry,' 'the preservation and humane treatment and preservation of wildlife,' and 'agricultural education scholarships and training of young people in the care and maintenance of animals.' * * * The Probate Court's October 16, 2008, Judgment Entry also lacks clarity as to which small trust is subject to reformation; apparently, funds held for either small trust may be distributed to entities selected at the Trustee's discretion. The inexplicably broad language of the Probate Court's order obliterated the specific charitable purpose of the small trusts to provide care for abused and neglected animals"); Appellant's Reply Brief at 1 ("Because reform affects only the enduring, charitable portions of the Trust, the Settlor's charitable purpose behind the two 'small trusts' governs any modification"); Id. at 5 ("The reformation ordered by the Probate Court alters the Trust only with respect to the two small trusts established for the purpose of providing for the care of abused and neglected animals").

income generated by the operation of Rice's $1.5–million farm designated for its benefit. Instead, the trial court allowed Dennler to distribute *undesignated* income from the remaining approximately $3.7 million in trust assets. Dennler estimates this income to be roughly $350,000 per year. This decision had no impact on IFAW and SICSA, which will continue to receive the income designated for them. It also had no impact on the Fayette County Charitable Foundation, which will continue to receive its designated income. Because the charities named in the two small trusts will continue to receive all income Rice designated for them, the trial court's ruling did not reform the two small trusts at all. Instead, it simply decided what, if anything, Dennler could do with the substantial income generated by the Jean Barger Rice trust that *had not* been designated to go anywhere.

{¶ 34} Admittedly, the trial court's decision does contain some language about reformation and the cy pres doctrine, which is used to modify certain charitable bequests. The trial court opined that the charities named in Rice's trust would be "overfunded" if they received all of the income designated for them *and* all of the undesignated income. As a result, the trial court purported to "reform" the Jean Barger Rice trust to allow Dennler to give the undesignated income to additional charities. But the trial court need not have considered whether the charities named in the small trusts would be overfunded if they received the undesignated income. Under the terms of the Jean Barger Rice trust, they were not entitled to it, regardless of any present or future need. As we have explained above, the Jean Barger Rice trust provided for the named charities to receive certain specifically designated income, nothing more. Thus, no reformation of the two small trusts was needed to allow Dennler to distribute undesignated income to additional charities beyond those named by Rice. That is all the trial court did here.

{¶ 35} We note that Dennler's complaint may have created some confusion about the need for reformation of the small trusts. In his complaint, he sought two distinct forms of relief. First, he sought permission to distribute the *undesignated* income discussed above to additional charities not named by Rice. Second, he asked the trial court to apply the cy pres doctrine to reform the small trust created for the benefit of the Fayette County Charitable Foundation. He alleged that the foundation did not need all of the farm income Rice had designated for it. Therefore, he asked the trial court to reform this charitable gift by allowing him to divert some of the farm income to the Fayette County Fair board. In its decision and judgment entry, however, the trial court only granted Dennler the first form of relief. The trial court limited its discussion to "undesignated funds," which it allowed Dennler to give to various additional charities, including the Fayette County Fair board. Nowhere in its ruling did the

trial court reform either of the small trusts by allowing Dennler to divert designated income away from them. Therefore, the state's appellate argument rests on a faulty premise that the trial court's ruling adversely impacted the small trusts by reforming them.

{¶ 36} Indeed, each of the state's six assignments of error is predicated on a belief that the trial court improperly reformed the charitable small trusts. Because the trial court did not do so, however, we have no occasion to resolve the state's argument that neither cy pres nor equitable deviation supports reforming them. Accordingly, we overrule the state's first three assignments of error, all of which assert, for various reasons, that cy pres and equitable deviation do not warrant reformation of the two small trusts. For much the same reason, we also overrule the state's last three assignments of error. In each of them, the state asserts that even if reformation of the two small trusts was permissible, cy pres and equitable deviation obligated the trial court to reform them in a manner consistent with the specific charitable purpose expressed by Rice therein, namely, to provide for the care of neglected and abused animals.

{¶ 37} If the trial court actually had reformed the two small trusts by diverting income from them for another use, we would agree that any new use must be consistent with the charitable purpose expressed in the small trusts. See, e.g., *Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.* (1997), 79 Ohio St.3d 98, 107, 679 N.E.2d 1084 ("Therefore, in applying the doctrine of deviation, a court cannot change the original charitable objective of the settlor or divert the bequest to an entity with a charitable purpose different from the purpose set forth in the trust instrument"); *In re Trust of Lowry*, 175 Ohio App.3d 107, 2008-Ohio-517, 885 N.E.2d 296, ¶ 21 (noting that when modifying a charitable trust under cy pres, "the purpose of the court-ordered modification must still be consistent with the settlor's specific charitable intent"). In the present case, however, the trial court did not reform either of the charitable small trusts created by the Jean Barger Rice trust. Rather, the trial court simply found that Dennler had the discretion to distribute undesignated income, which existed outside of the small trusts, to additional charities.

{¶ 38} Because the undesignated income at issue was not diverted from the small trusts, we see no reason why Dennler's use of that income should be constrained by the specific charitable purpose expressed in them.[2] This is

2. In fact, given that the Jean Barger Rice trust contained charitable and noncharitable bequests, we are not certain that the undesignated, surplus income at issue even must be used for a charitable purpose. The undesignated income was not set aside by Rice for any particular type of beneficiary, charitable or otherwise. Moreover, the Jean Barger Rice trust, as a whole, was not entirely charitable. Although it had certain charitable components, it also included noncharitable gifts. Therefore, we have some question as to whether the undesig-

especially true given that the language of the Jean Barger Rice trust granted Dennler discretion to distribute the undesignated income consistent with the trial court's decision and judgment entry. As set forth above, the trust authorized Dennler to "invest, retain *or distribute*" any "non-specified income." (Emphasis added.) Article III, Section 3.01, paragraph (c)(4)(n). Introductory language in Article VI, Section 6.01 also granted Dennler "the power to do any and every act and thing * * * with respect to property included in the trust created hereunder which [he] could do if [he] were the absolute owner thereof, limited in [his] discretion and judgment only to that of a prudent man exercising reasonable care." Finally, Article VI, Section 6.01, paragraph (*l*) granted Dennler discretionary power, which was to be broadly construed, to do any acts "necessary or appropriate," in his judgment, "for the proper or advantageous management, investment or disposition of any [trust] property." Read together, the foregoing provisions reasonably may be interpreted as granting Dennler the broad discretion to distribute undesignated income to additional charities of his choosing rather than allowing the $5.5 million Jean Barger Rice trust to grow ever larger.

{¶ 39} Based on the reasoning set forth above, we overrule the state's assignments of error and affirm the judgment of the Montgomery County Probate Court.

Judgment affirmed.

DONOVAN, P.J., and FROELICH, J., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.

---

nated income at issue even must be used for a charitable purpose. In any event, we need not resolve this issue, which strays far beyond the scope of the parties' briefs. For present purposes, we conclude only that the specific charitable intent expressed in the two small trusts did not control Dennler's disposition of the undesignated income that existed outside of them.